UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____

FORD MOTOR CREDIT COMPANY,              )       CIVIL ACTION
d/b/a PRIMUS FINANCIAL SERVICES and     )       NO.
AMERICAN SUZUKI AUTOMOTIVE CREDIT,      )
                                        )       03    12556 WGY
        Plaintiff                       )
                                        )       MAGISTRATE JUDGE
v.                                      )
                                        )       COMPLAINT
GREAT ATLANTIC INTERNATIONAL, INC.,     )
and                                     )       RECEIPT # _____
CAR CENTER USA, INC.,                   )       AMOUNT $ _____
                                        )       SUMMONS ISSUED _____
        Defendants                      )       LOCAL RULE 4.1 _____
                                        )       WAIVER FORM _____
_____)       MCF ISSUED _____
                                                BY DPTY. CLK. _____
                    The Parties                 DATE _____

1.    The plaintiff, Ford Motor Credit Company (hereinafter "Ford Credit"), is a Delaware corporation with its principal place of business at One American Road, Dearborn, Michigan, and conducts business at 25 Braintree Hill Office Park, Braintree, Massachusetts under the names and styles "PRIMUS Financial Services" and "American Suzuki Automotive Credit" or "ASAC".

2.    Defendant Great Atlantic International, Inc. (hereinafter "Great Atlantic") is a Massachusetts corporation with its principal place of business at 514-516 Lynnway, Lynn, Essex County, Commonwealth of Massachusetts.

3.    Defendant Car Center USA, Inc., (hereinafter "Car Center") is a Massachusetts corporation with its principal place of

business at 70 Chelsea Street, Everett, Middlesex County, in said Commonwealth.

4.    One John Jamali is president of each of the defendant corporations, which are members of an association known as the "John Jamali Automotive Group."

<u>Jurisdiction</u>

5.    This Court has jurisdiction over this action under 28 U.S.C. §1332 on the grounds that complete diversity exists between the parties and the amount in controversy exceeds $75,000.

<u>Count I</u>

6.    Ford Credit is in the business of providing financing for the purchase and lease of motor vehicles, including dealer floorplanning, at various vehicle dealerships throughout Massachusetts and elsewhere.

7.    On or about March 26, 2002 defendant Great Atlantic executed and delivered to Ford Credit its "Application for Wholesale Financing and Security Agreement", a complete and accurate copy of which is attached hereto as "A".

8.    Pursuant to said Application Ford Credit has extended financing to Great Atlantic with respect to the latter's used car inventory, as to which the present outstanding balance due Ford Credit is $2,499,980.

2

9.   In accordance with said Agreement Great Atlantic has granted Ford Credit a security interest in the vehicles comprising said used car inventory.

10.   Ford Credit's security interest in said vehicle inventory is perfected, as evidenced by the copies of recorded financing statements attached hereto as "B".

11.   The 117 vehicles presently comprising said used car inventory are identified on the schedule attached hereto as "C".

12.   Said Agreement provides in relevant part as follows:

"PRIMUS at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise.  PRIMUS may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. * * *" [Section 1]

<u>and</u>

"The aggregate amount outstanding from time to time of all Advances made by PRIMUS hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time.  Unless otherwise provided in the promissory note, instalment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to PRIMUS, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus PRIMUS' interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by PRIMUS hereunder with respect to an Item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. * * * " [Section 3]

3

13.  Ford Credit has in its discretion terminated financing to defendant Great Atlantic and on December 10, 2003 made written demand upon Great Atlantic for payment of all amounts outstanding and due Ford Credit under said financing.

14.  A copy of said demand is attached hereto as "D".

15.  Thus far Great Atlantic has failed or refused to pay Ford Credit the amount so demanded, rendering Great Atlantic in default of the aforesaid financing Agreement of March 26, 2002 ("A").

16.  Ford Credit wishes to proceed against the vehicles covered by said Agreement and has performed all conditions precedent to its right to do so, but it has hitherto been unable to effect peaceful repossession thereof.  Thus far said defendant has failed or refused to pay the contract balance or to deliver said vehicles to the plaintiff.

17.  By reason of said defendant's aforesaid default and the inability of Ford Credit to take possession of said vehicles peaceably, Ford Credit believes that said vehicles are in immediate danger of misuse, misappropriation or conversion and that its interest is in immediate jeopardy.  Said vehicles are also rapidly declining in value, having a current aggregate fair market value of less than $2,499,980.  Unless Ford Credit is granted the immediate possession of said vehicles, it is highly probable that it will incur substantial loss through depreciation or other damage to its interest.

4

18.  Ford Credit believes that said vehicles are in the possession, custody or control of defendant Great Atlantic.

19.  Ford Credit brings this Complaint under the provisions of Chapters 106 and 214 of the Massachusetts General Laws and to enforce specifically its rights under said Agreement, including the recovery of reasonable attorneys' fees and expenses as provided therein.

### Count II

20.  Ford Credit is in the business of providing financing for the purchase and lease of motor vehicles, including dealer floorplanning, at various vehicle dealerships throughout Massachusetts and elsewhere.

21.  On or about March 24, 2001 defendant Car Center executed and delivered to Ford Credit its "Application for Wholesale Financing and Security Agreement", a complete and accurate copy of which is attached hereto as "E".

22.  Pursuant to said Application Ford Credit has extended financing to Car Center with respect to the latter's new car inventory, as to which the present outstanding balance due Ford Credit is $664,012.09.

23.  In accordance with said Agreement Car Center has granted Ford Credit a security interest in the vehicles comprising said new car inventory.

24.  Ford Credit's security interest in said vehicle inventory is perfected, as evidenced by the copies of recorded financing statements attached hereto as "F".

25.  The 32 vehicles presently comprising said new car inventory are identified on the schedule attached hereto as "G".

26.  Said Agreement provides in relevant part as follows:

"ASAC at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise.  ASAC may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. * * *" [Section 1]

and

"The aggregate amount outstanding from time to time of all Advances made by ASAC hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time.  Unless otherwise provided in the promissory note, instalment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to ASAC, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus ASAC's interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by ASAC hereunder with respect to an Item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. * * * " [Section 3]

27.   Ford Credit has in its discretion terminated financing to defendant Car Center and on December 10, 2003 made written demand upon Car Center for payment of all amounts outstanding and due Ford Credit under said financing.

28.   A copy of said demand is attached hereto as "H".

29.   Thus far Car Center has failed or refused to pay Ford Credit the amount so demanded, rendering Car Center in default of the aforesaid financing Agreement of March 24, 2001 ("A").

30.   Ford Credit wishes to proceed against the vehicles covered by said Agreement and has performed all conditions precedent to its right to do so, but it has hitherto been unable to effect peaceful repossession thereof.  Thus far said defendant has failed or refused to pay the contract balance or to deliver said vehicles to the plaintiff.

31.   By reason of said defendant's aforesaid default and the inability of Ford Credit to take possession of said vehicles peaceably, Ford Credit believes that said vehicles are in immediate danger of misuse, misappropriation or conversion and that its interest is in immediate jeopardy.  Said vehicles are also rapidly declining in value, having a current aggregate fair market value of less than $664,012.09.  Unless Ford Credit is granted the immediate possession of said vehicles, it is highly probable that it will incur substantial loss through depreciation or other damage to its interest.

7

32.   Ford Credit believes that said vehicles are in the possession, custody or control of defendant Car Center.

33.   Ford Credit brings this Complaint under the provisions of Chapters 106 and 214 of the Massachusetts General Laws and to enforce specifically its rights under said Agreement, including the recovery of reasonable attorneys' fees and expenses as provided therein.

WHEREFORE, the plaintiff prays:

1.   Under Count I that defendant Great Atlantic International, Inc., its agents, servants, attorneys, nominees and assignees, be restrained from causing or permitting the stripping, impairment, sale, transfer, assignment, encumbering, removal, concealment or any other disposition of the vehicles described on attachment "C" hereof, pending further order of this Court.

2.   Under Count I that the defendant Great Atlantic International, Inc. be ordered: (a) to identify the location the vehicles described on attachment "C" hereof, (b) to deliver said vehicles forthwith to the plaintiff; and (c) to refrain from interfering in any way with the plaintiff's entry upon property owned or leased by said defendant for the purpose of obtaining and securing possession of said vehicles and removing same from said property.

3.   Under Count I that this Court find that defendant Great Atlantic International, Inc. is indebted to the plaintiff in the amount of $2,499,980, and that judgment be entered for the plaintiff against said defendant in that amount, with interest thereon from the date of entry and costs, as well as reasonable attorneys' fees and costs of collection incurred in this action.

4.   Under Count I that this Court declare that it is the secured creditor and first lienholder of the vehicles described on attachment "C" hereof, and that an appropriate judgment be entered for the enforcement of the plaintiff's rights as such.

5.   Under Count II that defendant Car Center USA, Inc., its agents, servants, attorneys, nominees and assignees, be restrained from causing or permitting the stripping, impairment, sale, transfer, assignment, encumbering, removal, concealment or any other disposition of the vehicles described on attachment "G" hereof, pending further order of this Court.

6.   Under Count II that the defendant Car Center USA, Inc. be ordered: (a) to identify the location the vehicles described on attachment "G" hereof, (b) to deliver said vehicles forthwith to the plaintiff; and (c) to refrain from interfering in any way with the plaintiff's entry upon property owned or leased by said defendant for the purpose of obtaining and securing possession of said vehicles and removing same from said property.

7.    Under Count II that this Court find that defendant Car Center USA, Inc. is indebted to the plaintiff in the amount of $664,012.09, and that judgment be entered for the plaintiff against said defendant in that amount, with interest thereon from the date of entry and costs, as well as reasonable attorneys' fees and costs of collection incurred in this action.

8.    Under Count II that this Court declare that it is the secured creditor and first lienholder of the vehicles described on attachment "G" hereof, and that an appropriate judgment be entered for the enforcement of the plaintiff's rights as such.

9.    That the plaintiff have such other and further relief as this Honorable Court may deem proper in the premises.


Attorneys for the Plaintiff,                    FORD MOTOR CREDIT COMPANY,
                                                doing business at PRIMUS
                                                FINANCIAL SERVICES and
                                                AMERICAN SUZUKI AUTOMOTIVE
                                                CREDIT,


Michael E. Hager, Esquire                       John V. Carolan
Dane & Howe, LLP                                Branch Manager
45 School Street
Boston, MA 02108-3204
(617) 227-3600
BBO No. 216460


10

Commonwealth of Massachusetts

Norfolk, ss.

Braintree, Massachusetts
December *18*, 2003

John V. Carolan, being duly sworn, deposes and says that he is Branch Manager of the office of Ford Motor Credit Company, doing business as PRIMUS Financial Services and American Suzuki Automotive Credit, and that the facts set forth in the foregoing Complaint are true to his own knowledge, information and belief, and that, so far as they are based upon information and belief, he believes such information to be true.

Notary Public
My Commission Expires:

MICHAEL E. HAGER
NOTARY PUBLIC
My Commission Expires Feb. 23, 2007

# FORD MOTOR CREDIT COMPANY DBA PRIMUS Financial Services

# AUTOMOTIVE WHOLESALE PLAN
# APPLICATION FOR WHOLESALE FINANCING
# AND SECURITY AGREEMENT

Date 3-26-2002

To: Ford Motor Credit Company dba PRIMUS Financial Services (hereinafter called "PRIMUS")

The undersigned _____ Great Atlantic International, Inc. _____
(DEALER'S EXACT LEGAL NAME)

a _____ corporation _____ (hereinafter called "Dealer"), primarily
(CORPORATION, PARTNERSHIP, LLC, OR OTHER ORGANIZATION)

organized under or registered in the state of _____ Massachusetts _____
managing its business from it chief executive office located at _____ 514-516 Lynnway _____
Lynn, MA 01905 _____

and with merchandise (as herein defined) located in the following state(s) as of the date hereof _____

hereby requests PRIMUS to establish and maintain for Dealer a wholesale line of credit to finance new, used and demonstrator motor vehicles, trucks, other vehicles and other merchandise for (hereinafter called the "Merchandise") Dealer under the terms of the PRIMUS Wholesale Plan as set forth in the PRIMUS Dealer Manual entitled "Automotive Finance Plans for Dealers" or any subsequent edition or modification thereof (hereinafter called the "Plan") and in connection therewith to make advances to or on behalf of Dealer, purchase instalment sale contracts evidencing the sale of Merchandise to Dealer by the manufacturer, distributor or other seller thereof, or otherwise extend credit to Dealer. In consideration thereof Dealer hereby agrees as follows:

## 1. Advances by PRIMUS

PRIMUS at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise. PRIMUS may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. In connection with the purchase of any such contract and/or other extension of credit, PRIMUS may pay to any manufacturer, distributor or other seller of Merchandise the invoice or contract amount therefor, and be fully protected in relying in good faith upon any invoice, contract or other advice from such manufacturer, distributor or seller that the Merchandise described therein has been ordered or shipped to Dealer and that the amount therefor is correctly stated. Any such payment made by PRIMUS to any such manufacturer, distributor or seller, and any loan or other extension of credit made by PRIMUS directly to Dealer with respect to Merchandise of any type held by Dealer for sale, shall be an Advance made by PRIMUS hereunder and, except with respect to any Advance that is a purchase of an instalment sale contract, shall be repayable to Dealer in accordance with the terms hereof. All rights of PRIMUS and obligations of Dealer with respect to Advances hereunder that constitute the purchase by PRIMUS of an instalment sale contract shall be pursuant to the provisions of such contract.

From time to time PRIMUS shall furnish statements to Dealer of Advances made by PRIMUS hereunder. Dealer shall review the same promptly upon receipt and advise PRIMUS in writing of any discrepancy therein. If Dealer shall fail to advise PRIMUS of any discrepancy in any such statement within ten calendar days following the receipt thereof by Dealer, such statement shall be deemed to be conclusive evidence of advances made by PRIMUS hereunder unless Dealer or PRIMUS establishes by a preponderance of evidence that such Advances were not made or were made in different amounts than as set forth in such statement.

## 2. Interest and Service and Insurance Flat Charges

Each Advance made by PRIMUS hereunder shall bear interest at the rates established by PRIMUS from time to time for Dealer, except that any amount not paid when due hereunder shall bear interest at a rate that is 4 percentage points higher than the current pre-default rate up to the maximum contract rate permitted by the law of the state where Dealer maintains his business as set out above. In addition to interest, the financing of Merchandise under the Plan shall be subject to service and flat charges established by PRIMUS from time to time for Dealer. PRIMUS shall advise Dealer in writing from time to time of any change in the interest rate and service and flat charges applicable to Dealer and the effective date of such change. Such change shall not become effective, however, if Dealer elects to terminate this Agreement and pay to PRIMUS the full unpaid balance outstanding under Dealer's wholesale line of credit and all other amounts due or to become due hereunder in good funds within ten calendar days after the receipt of such notice by Dealer.

## 3. Payments by Dealer

The aggregate amount outstanding from time to time of all Advances made by PRIMUS hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time. Unless otherwise provided in the promissory note, instalment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to PRIMUS, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus PRIMUS's interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by PRIMUS hereunder with respect to an item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. Dealer also shall pay to PRIMUS, upon demand, the full amount of any rebate, refund or other credit received by Dealer with respect to the Merchandise.

If the promissory note, instalment sale contract, chattel paper, security agreement or other instrument evidencing an Advance or Advances is payable in one or more instalments, PRIMUS may from time to time in its sole discretion, extend any instalment due

thereunder on a month-to-month basis, and, except as provided below or in any instalment sale contract, PRIMUS's failure to demand any such instalment when due shall be deemed to be a one month extension of the same. Any such extension, however, shall not obligate PRIMUS to grant an extension in the future or waive PRIMUS's right to demand payment when due. Following the sale, lease or use date of an item of the Merchandise, no instalment shall be deemed extended without PRIMUS's specific written consent, and Dealer agrees to pay the same, as required, without demand.

4.    PRIMUS Security Interest

As security for all Advances now or hereafter made by PRIMUS hereunder, and for the observance and performance of all other obligations of Dealer to PRIMUS in connection with the wholesale financing of Merchandise for Dealer, Dealer hereby grants to PRIMUS a security interest in the Merchandise now owned or hereafter acquired by Dealer, accessions thereto, accessories and replacement parts therefore, and in the proceeds and products thereof in whatever form, of any sale or other disposition of the Merchandise or other collateral, and in accounts, instruments, chattel paper, general intangibles, contract rights, documents, and supporting obligations arising from the disposition of the Merchandise or other collateral; all motor vehicles and vehicles of all types, all motor vehicle parts and accessories inventory, and all equipment, wherever located, whether now owned or hereafter acquired, and all accounts, notes receivable, insurance proceeds, chattel paper, instruments and documents relating thereto and proceeds thereof; all accounts and general intangibles including sums receivable from vendors by way of holdbacks, rebates, refunds, discounts, bonuses and the like. All fixtures and furniture. Dealer authorizes PRIMUS to file a financing statement(s) generally describing the Merchandise and other collateral provided hereunder.

5.    Dealer's Possession and Sale of Merchandise

Dealer's possession of the Merchandise financed shall be for the sole purpose of storing and exhibiting the same for sale or lease in the ordinary course of Dealer's business. Dealer shall keep the Merchandise brand new and subject to inspection by PRIMUS and free from all taxes, liens and encumbrances, and any sums of money that may be paid by PRIMUS in release or discharge of any taxes, liens or encumbrances on the Merchandise or on any documents executed in connection therewith shall be paid by Dealer to PRIMUS upon demand. Except as may be necessary to remove or transport the same from a freight depot to Dealer's place of business, Dealer shall not use or operate, or permit the use or operation of, the Merchandise for demonstration or otherwise without the express prior written consent of PRIMUS in each case, and shall not in any event use the Merchandise illegally or improperly. Dealer shall not mortgage, pledge or loan any of the Merchandise, and shall not transfer or otherwise dispose of the same except by sale or lease in the ordinary course of Dealer's business. Dealer will not move the Merchandise from the states listed above. Any and all proceeds of any sale, lease or other disposition of the Merchandise by Dealer shall be received and held by Dealer in trust for PRIMUS and shall be fully, faithfully and promptly accounted for and remitted by Dealer to PRIMUS to the extent of Dealer's obligation to PRIMUS with respect to the Merchandise. As used in this paragraph 5, (a) "sale in the ordinary course of Dealer's business" shall include only (i) a bona fide retail sale to a purchaser for his own use at the fair market value of the Merchandise sold, and (ii) an occasional sale of such Merchandise to another dealer at a price not less than Dealer's cost of the Merchandise sold, unless such sale is a part of a plan or scheme to liquidate all or any portion of Dealer's business, and (b) "lease in the ordinary course of Dealer's business" shall include only a bona fide lease to a lessee for his own use at a fair rental value of the Merchandise leased.

6.    Risk of Loss and Insurance Requirements

The Merchandise shall be at Dealer's sole risk of any loss or damage to the same, except to the extent of any insurance proceeds actually received by PRIMUS with respect thereto under the Plan. Dealer shall insurance obtained by PRIMUS pursuant to the Plan. Dealer shall indemnify PRIMUS against all claims for injury or damage to persons or property caused by the use, operation or holding of the Merchandise and, if requested to do so by PRIMUS, maintain at its own expense liability insurance in connection therewith in such form and amounts as PRIMUS may reasonably require from time to time. In addition, Dealer shall insure each item of the Merchandise that is or may be used for demonstration or operated for any other purpose against loss due to collision, subject in each case to the deductible amounts and limitations set forth in the Plan.

7.    Credits

All funds or other property belonging to PRIMUS and received by Dealer shall be received by Dealer in trust for PRIMUS and shall be remitted to PRIMUS forthwith. PRIMUS, at all times, shall have a right to offset and apply any and all credits, monies or properties of Dealer in PRIMUS possession or control against any obligation of Dealer to PRIMUS.

8.    Information Concerning Dealer

To induce PRIMUS to extend financing accommodations hereunder, Dealer has submitted information concerning itself, its legal name, guarantors, business organization, state of incorporation or registration and financial condition, and certifies that the same is complete, true and correct in all respects and that the financial information contained therein and any that may be furnished to PRIMUS from time to time hereafter does and shall fairly present the financial condition of Dealer and any guarantor in accordance with generally accepted accounting principles applied on a consistent basis. Dealer agrees to notify PRIMUS at least 30 days prior to or promptly after receiving knowledge thereof of any merger or material change in its business organization, name, form of organization, state of incorporation or registration or financial condition or in any information relating thereto previously furnished to PRIMUS. Dealer acknowledges and intends that PRIMUS shall rely, and shall have the right to rely, on such information in extending and continuing to extend financing accommodations to Dealer. Dealer hereby authorized PRIMUS from time to time and at all reasonable times to examine, appraise and verify the existence and condition of all Merchandise, documents, commercial or other paper and other property in which PRIMUS has or has had any title, title retention, lien, security or other interest, and all of Dealer's books and records in any way relating to its business.

9.    Default

The following shall constitute an Event of Default hereunder:
(a) Dealer shall fail to promptly pay any amount now or hereafter owing to PRIMUS as and when the same shall become due and payable, or
(b) Dealer shall fail to duly observe or perform any other obligation secured hereby, or
(c) any representation made by Dealer to PRIMUS shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
(d) a proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer or Dealer's property.
Upon the occurrence of an Event of Default, PRIMUS may accelerate, and declare immediately due and payable, all or any part of the unpaid balance of all Advances made hereunder together with accrued interest and flat charges, without notice to anyone. In addition, PRIMUS may take immediate possession of all property in which it has a security interest hereunder, without

demand or other notice and without legal process.  For this purpose and in furtherance thereof, if PRIMUS so requests, Dealer shall assemble such property and make it available to PRIMUS at a reasonably convenient place designated by PRIMUS, and PRIMUS shall have the right, and Dealer hereby authorizes and empowers PRIMUS, its agents or representatives, to enter upon the premises wherever such property may be and remove same.  In the event PRIMUS acquires possession of such property or any portion thereof, as hereinbefore provided, PRIMUS may, in its sole discretion (i) sell the same, or any portion thereof, after at least five days' written notice or such notice as required by law, at public or private sale for the account of Dealer, (ii) declare this agreement, all wholesale transactions and Dealer's obligations in connection therewith to be terminated and canceled and retain any sums of money that may have been paid by Dealer in connection therewith, and (iii) enforce any other remedy that PRIMUS may have under applicable law.  Dealer agrees that the sale by PRIMUS of any new and unused property repossessed by PRIMUS to the manufacturer, distributor or seller thereof, or to any person designated by such manufacturer, distributor or seller, at the invoice cost thereof to Dealer less any credits granted to Dealer with respect thereto and reasonable costs of transportation and reconditioning, shall be deemed to be a commercially reasonable means of disposing of the same.  Dealer further agrees that if PRIMUS shall solicit bids from three or more other dealers in the type of property repossessed by PRIMUS hereunder, any sale by PRIMUS of such property in bulk or in parcels to the bidder submitting the highest cash bid therefor also shall be deemed to be a commercially reasonable means of disposing of the same. Dealer understands and agrees, however, that such means of disposal shall not be exclusive, and that PRIMUS shall have the right to dispose of any property repossessed hereunder by any commercially reasonable means.  Dealer agrees to pay reasonable attorneys' fees and legal expenses incurred by PRIMUS in connection with the repossession and sale of any such property.  PRIMUS's remedies hereunder are cumulative and may be enforced successively or concurrently.

10.    General

Dealer waives the benefit of all homestead and exemption laws and agrees that the acceptance by PRIMUS of any payment after it may have become due or the waiver by PRIMUS of any other default shall not be deemed to alter or affect Dealer's obligations or PRIMUS's right with respect to any subsequent payment or default. Neither this agreement, nor any other agreement between Dealer and PRIMUS, or between Dealer and any manufacturer, distributor or seller that has been assigned to PRIMUS, nor any funds payable by PRIMUS to Dealer, shall be assigned by Dealer without the express prior written consent of PRIMUS in each case.

Witness or Attest:

Any provision hereof prohibited by any applicable law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. Except as herein provided, no modification hereof may be made except by a written instrument duly executed by, or pursuant to the express written authority of an executive officer of PRIMUS.
Dealer shall execute and deliver to PRIMUS promissory notes or other evidences of Dealer's indebtedness hereunder, security agreements, trust receipts, chattel mortgages or other security instruments and any other documents which PRIMUS may reasonably request to confirm Dealer's obligations to PRIMUS and to confirm PRIMUS's security interest in the Merchandise financed by PRIMUS under the Plan or in any other property as provided hereunder, and in such event the terms and conditions hereof shall be deemed to be incorporated therein.  PRIMUS's security or other interest in any the Merchandise shall not be impaired by the delivery to Dealer of Merchandise or of bills of lading, certificates of origin, invoices or other documents pertaining thereto or by the payment by Dealer of any curtailment, security or other deposit or portion of the amount financed.  The execution by Dealer or on Dealer's behalf of any document for the amount of any credit extended shall be deemed evidence of Dealer's obligation and not payment thereof.  PRIMUS may, for and in the name of Dealer, endorse and assign any obligation transferred to PRIMUS by Dealer and any check or other medium  of payment intended to apply upon such obligation.  PRIMUS may complete any blank space and fill in omitted information on any document or paper furnished to it by Dealer.
Unless the context otherwise clearly requires, the terms used herein shall be given the same meaning as ascribed to them under the provisions of the Uniform Commercial Code.  Section headings are inserted for convenience only and shall not affect any construction or interpretation of this agreement.
This agreement shall be interpreted in accordance with the laws of the state of the Dealer's place of business set out above.

11.    Acceptance and Termination

Dealer waives notice of PRIMUS's acceptance of this agreement and agrees that it shall be deemed accepted by PRIMUS at the time PRIMUS shall first extend credit to Dealer under the Plan.  This agreement shall be binding on Dealer and PRIMUS and their respective successors and assigns and shall bind all persons who become bound as a debtor to this agreement from the date thereof until terminated by receipt of a written notice by either party from the other, except that any such termination shall not relieve either party from any obligation incurred prior to the effective date thereof.

Great Atlantic International, Inc.
(DEALER'S EXACT BUSINESS NAME)

04-3335468
(FEDERAL EMPLOYER TAX ID NUMBER)

96318004
(DEALER'S STATE ORGANIZATION ID NUMBER)

By _____   President
                           Title

## POWER OF ATTORNEY FOR WHOLESALE

KNOW ALL MEN BY THESE PRESENTS: That the undersigned dealer does hereby make, constitute and appoint D.W. Sneddon, R.L. Croff, and K.L. Parsons, all of Franklin, Tennessee and each of them and any other officer or employee of Ford Motor Credit Company dba PRIMUS Financial Services (hereinafter called "PRIMUS") of Franklin, Tennessee, its true and lawful attorneys with full power of substitution, for and in its name, stead and behalf, to prepare, make, execute, acknowledge and deliver to PRIMUS from time to time, and trust receipts, chattel mortgages and other evidences of indebtedness, bearing such rate of interest as PRIMUS may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments or documents necessary or appropriate in connection with the wholesale financing by PRIMUS of merchandise for the undersigned dealer under the terms of the PRIMUS Automotive Wholesale Plan, and generally to perform all acts and to do all things necessary or appropriate in discharge of the power hereby conferred, including the making of affidavits and the acknowledging of instruments, as if fully done by the undersigned dealer, and each of the said attorneys hereby is further authorized and empowered in the discharge of the power hereby conferred to execute any instruments by means of either a manual, imprinted or other facsimile signature or by completing a printed form to which an imprinted or other facsimile signature is then affixed.

This Power of Attorney is executed by the undersigned dealer to induce PRIMUS to make advances for merchandise to be acquired by the undersigned dealer and recognizes that such advances are made to manufacturers, distributors and other sellers of such merchandise at places other than the undersigned dealer's place of business, and that it is impractical for the undersigned dealer to execute the promissory notes, trust receipts, chattel mortgages and other title, retention or security instruments necessary or appropriate in connection with such advances without unduly delaying the delivery of such merchandise to the undersigned dealer. Accordingly, this Power of Attorney may be revoked by the undersigned dealer only by notice in writing addressed to PRIMUS, Franklin, Tennessee by registered mail, return receipt requested, stating an effective date on or after the receipt thereof by PRIMUS

Dated this 26th day of March, 2002

Witness or Attest

Great Atlantic International, Inc.

By _Jamal_ _President_
Title

State of Massachusetts

County of _____

On this 26 day of March, 2002 before me, the undersigned Notary Public, personally appeared _____
who acknowledged himself to be the _President_ (TITLE) of Great Atlantic International, Inc. (DEALER'S NAME)
the grantor of the foregoing Power of Attorney, and that he, being authorized so to do, executed the foregoing Power of Attorney for the purposes therein contained, by signing the name of the said grantor by himself in the capacity indicated.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

_Marie E. Carlo_
NOTARY PUBLIC

(NOTARY'S SEAL)

My commission expires 9-27-02

## CERTIFIED COPY OF RESOLUTION OF BOARD OF DIRECTORS

The undersigned hereby certifies that he is the Secretary of _____ Great Atlantic International, Inc. _____
(DEALER'S EXACT CORPORATE NAME)

of _____ 514-516 Lynnway _____ Lynn, MA 01905 _____
(DEALER'S ADDRESS)

and that the following is a true, correct and complete copy of resolutions adopted by the board of directors of the said corporation at a meeting duly called and held on _____ 3.25 _____, 20 02, at which a quorum was present and voting, and that said resolutions are unchanged and are now in full force and effect:

RESOLVED, That the officers of this corporation be, and each hereby is, authorized and empowered to execute and deliver on behalf of this corporation an Application for Wholesale Financing to Ford Motor Credit Company dba PRIMUS Financial Services (hereinafter called "PRIMUS") of Franklin, Tennessee, in such form and upon such terms and conditions as the said PRIMUS may require, and to execute and deliver from time to time promissory notes or other evidences of indebtedness, bearing such rate of interest as the said PRIMUS may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments or documents as, and in such form as, the said PRIMUS may require, evidencing any financing extended by the said PRIMUS to this corporation under the terms of the PRIMUS Automotive Wholesale Plan.

FURTHER RESOLVED, That D.W. Sneddon, R.L. Croff, and K.L. Parsons, all of Franklin, Tennessee, and each of them and any other officer or employee of the said Ford Motor Credit Company, a Delaware corporation, dba PRIMUS Credit be and each of them hereby is constituted and appointed an attorney-in-fact of this corporation for the purposes set forth in the Power of Attorney presented to this board of directors this date, with full power of substitution, and the officers of this corporation are, and each of them hereby is, authorized and empowered to execute a formal Power of Attorney in such form.

FURTHER RESOLVED, That the officers of this corporation be, and each hereby is, authorized and empowered to do all other things and to execute all other instruments and documents necessary or appropriate in the premises.

IN WITNESS WHEREOF I have hereunto set may hand and affixed the corporate seal of the said corporation this 26 TH day of March, 20 02

_____ SECRETARY

CORPORATE SEAL

**CERTIFICATE**
(Corporation)

The undersigned President and Secretary of _____ Great Atlantic International, Inc. _____,
                                                          (Exact corporate name as shown in Articles of Incorporation)

organized under or registered in the state of __Massachusetts__ , (hereinafter called the "Company")

DO HEREBY CERTIFY:

1.  That the Company is a duly incorporated and existing corporation in good standing under the laws
    of the State above mentioned and that it was organized and incorporated on November 13, 1996;

2.  That, having due regard to all restrictions contained in the Articles of Incorporation, Charter, Code
    of Regulations, By-Laws, or other organic documents of the Company and all outstanding
    agreements and commitments of the Company, the Company has the power and authority to do the
    character of business conducted by it and to borrow funds from or otherwise become indebted to
    Ford Motor Credit Company dba PRIMUS Financial Services (hereinafter referred to as PRIMUS
    Financial Services);

3.  That the following are true and correct resolutions from the minutes of the board of directors or
    other governing body of the Company duly called and held on _3 - 25_ , 200_2_, at which a
    quorum was present and voting, and that the same are now in full force and effect.

RESOLVED, that the officers of the Company are, and each of them is, hereby authorized and directed to
borrow from or become indebted to PRIMUS Financial Services from time to time in such amounts as in the
judgment of such officer or officers may be necessary or desirable to conduct the business of the Company
and to execute on behalf of the Company and deliver to the said PRIMUS Financial Services in the form
required by the said PRIMUS Financial Services, a promissory note or notes of the Company or other
documents evidencing the amount or amounts borrowed or indebted and renewals or extensions thereof,
plus charges if any, which note, notes or other documents may bear such rate of interest or finance charge
and be payable in such manner as PRIMUS Financial Services may require; and

FURTHER RESOLVED, that the officers of the Company are, and each of them is, hereby authorized and
directed to do any and all acts including but not limited to the mortgage, assignment, pledge or
hypothecation from time to time of any or all assets of the Company to secure such loan, loans or other
indebtedness, renewals and extensions thereof, and to execute and deliver in the name and on behalf of the
Company, any instruments or agreements or security devices deemed necessary or proper by the said
PRIMUS Financial Services in respect to the collateral securing any indebtedness of the Company to the
said PRIMUS Financial Services; and

FURTHER RESOLVED, that these resolutions may be relied upon by the said PRIMUS Financial Services until
receipt by it of a written notice of any change therein.

IN WITNESS WHEREOF we have hereunto set our hands and affixed the seal of the Company this 25_Th_
day of _March_ , 20_02_.

(Corporate Seal)

_____ (President)

_____ (Secretary)

04-3335468
(FEDERAL EMPLOYER/TAX ID NUMBER)
04-3335468

963/8004
(STATE ORGANIZATIONAL ID NUMBER, IF ANY)

MA SOC : .ng Number: 200210095140     Date: 0: /2002 3:12:00 PM

MAR 21 '02 13:04 FR PRIMUS DEALER CREDIT 615 315 6851 TO 916176243891     P.02/10

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Ford Motor Credit Company
Attn: Gail Vannatta 610
P.O. Box 680020
Franklin, TN 37068-0020

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Great Atlantic International, Inc. | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 514-516 Lynnway | Lynn | MA | 01905 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 04-3335468 | | Corporation | Massachusetts | | ✓ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Ford Motor Credit Company, a Delaware Corporation dba PRIMUS Financial Services | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P. O. Box 680020 | Franklin | TN | 37068-0020 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Motor vehicles and vehicles of all types, all motor vehicle parts and accessories inventory, and all equipment, wherever located, whether now owned or hereafter acquired, and all accounts, notes receivable, insurance proceeds, chattel paper, instruments and documents relating thereto and proceeds thereof; all accounts and general intangibles including sums receivable from vendors by way of holdbacks, rebates, refunds, discounts, bonuses and the like. All fixtures and furniture.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

MAR 27 '02 16:13 FR BOSTON WHOLESALE   617 849 5393 TO 916176243891   P.06/10

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

John V. Carolan, Branch Manager
Ford Motor Credit Company
25 Braintree Hill Office Park
Braintree, MA 02184

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Great Atlantic International Inc. | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1b. INDIVIDUAL'S LAST NAME | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 514-516 Lynnway | Lynn | MA | 01905 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 04-3335468 | | Corporation | Massachusetts | 96318004 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2b. INDIVIDUAL'S LAST NAME | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ford Motor Credit Company | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3b. INDIVIDUAL'S LAST NAME | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 25 Braintree Hill Office Park | Braintree | MA | 02184 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

1. Furniture, machinery, service vehicles, supplies, and other equipment.

2. Motor vehicles, tractors, trailers, service parts and accessories, and other inventory.

3. Accounts, contract rights, chattel paper, and general intangibles.

4. Fixtures located at the real property known as 514-516 Lynnway, Lynn, Massachusetts.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

22737-3-0

```
COMPANY  43   PRIMUS REGION                      DEALER FLOORPLAN SYSTEM        *CL41TB43*      PAGE NO                    10
REGION   004  BOSTON REGION                     WHOLESALE DEALER SUMMARY         TUESDAY        CAPTURE DATE 12/16/03
STATE    020  MASSACHUSETTS                        REPORT NUMBER - 91                           PROCESS THRU 12/16/03
```

| | CONT ID | MFR LINE | YR | UNITS | AMOUNT | APPROVED COMMITMENT | AVAILABLE LINE | EXP DATE |
|---|---|---|---|---|---|---|---|---|
| DEALER | | | | | | | | |
| 0018229 GREAT ATLANTIC INTERNATIONAL INC AFS | USD | 20 | | | | | | |
| | | USD 20 | 1998 | 4 | 73,000.00 | | | |
| | | | 1999 | 11 | 214,450.00 | | | |
| | | | 2000 | 37 | 659,640.00 | | | |
| | | | 2001 | 46 | 1,033,740.00 | | | |
| | | | 2002 | 12 | 259,335.00 | | | |
| | | | 2003 | 6 | 204,315.00 | | | |
| | | | 2004 | 1 | 55,500.00 | | | |
| | | | TOTALS | 117 | 2,499,980.00 | 2,500,000 | 20.00 | 11/30/03 |
| | DEALER | | TOTALS | 117 | 2,499,980.00 | 2,500,000 | 20.00 | |

DEALER FLOOR PLAN SYSTEM
DEALER STATUS

CTL2 000     CTL3 000     DEALER 0018227     NAME GREAT ATLANTIC INTERNATIONAL IN

| LINE | VIN | PBI | ITEM DESCRIPTION | FLOOR DT | PRIN BAL | MAT DTE |
|---|---|---|---|---|---|---|
| 20 | WBACN33491LM00196 | 01 | BMW Z3 | 12/03/03 | 20000.00 | 06/03/04 |
| 20 | TRUTC28N811000202 | 01 | AUDI TT | 10/23/03 | 19000.00 | 04/23/04 |
| 20 | WAUZL54B5YN000773 | 00 | AUDI A6 | 11/07/03 | 22500.00 | 05/07/04 |
| 20 | WBAAM5331XFR01006 | 99 | BMW 328I | 11/12/03 | 13000.00 | 05/12/04 |
| 20 | TRUTC28N711001423 | 01 | AUDI TT | 08/21/03 | 16050.00 | 02/21/04 |
| 20 | WAUDC68D11A002853 | 01 | AUDI A4 | 12/16/03 | 12350.00 | 06/16/04 |
| 20 | JH4KA965XYC004482 | 00 | ACURA 3 5RL | 08/21/03 | 20000.00 | 02/21/04 |
| 20 | JH4KA9657XC006818 | 99 | ACURA 3 5RL | 09/15/03 | 16800.00 | 03/15/04 |
| 20 | 19UYA42431A010098 | 01 | ACURA 3 0CL | 07/07/03 | 17125.00 | 01/07/04 |
| 20 | 19UUA5664YA011582 | 00 | ACURA TL | 06/23/03 | 16300.00 | 12/23/03 |
| 20 | WDBPJ78JX1A011907 | 01 | MER-B CL430 | 09/11/03 | 63000.00 | 03/11/04 |
| 20 | WAUFL54D2YN013016 | 00 | AUDI A8 | 08/21/03 | 26350.00 | 02/21/04 |
| 20 | SAJDA01N11FM13733 | 01 | JAG SV6 | 10/23/03 | 27000.00 | 04/23/04 |
| 20 | SAJEA51C32WC13828 | 02 | JAG X30 | 08/26/03 | 20185.00 | 02/26/04 |
| 20 | 9BWPG61J324014593 | 02 | VW GTI | 10/01/03 | 15000.00 | 04/01/04 |
| 20 | JNKCP11A7XT016631 | 99 | INFIN G20 | 11/24/03 | 7500.00 | 05/24/04 |
| 20 | SAJDA01CXYFL20878 | 00 | JAG SV6 | 09/15/03 | 22800.00 | 03/15/04 |
| 20 | WBAGH83421DP20931 | 01 | BMW 740 | 09/29/03 | 28375.00 | 03/29/04 |
| 20 | SAJGX2246WC022373 | 98 | JAG XTYPE | 10/30/03 | 20000.00 | 04/30/04 |
| 20 | WAUAC48H83K023755 | 03 | AUDI A4 | 12/15/03 | 31900.00 | 06/15/04 |
| 20 | SAJEB51D72XC24170 | 02 | JAG XTYPE | 09/17/03 | 18100.00 | 03/17/04 |
| 20 | SAJDA14C71LF27045 | 01 | JAG XJ8 | 09/15/03 | 28000.00 | 03/15/04 |
| 20 | WDBRF64J01F027367 | 01 | MER-B CL320 | 12/03/03 | 19700.00 | 06/03/04 |
| 20 | 9BWDD21J114027779 | 01 | VW GTI | 08/21/03 | 10275.00 | 02/21/04 |
| 20 | WAUDC68D31A028242 | 01 | AUDI A4 | 12/15/03 | 17700.00 | 06/15/04 |
| 20 | WBABN53441JU31519 | 01 | BMW 328I | 12/10/03 | 23500.00 | 06/10/04 |
| 20 | WDBRF61J91F032278 | 01 | MER-B C230W | 12/02/03 | 22700.00 | 06/02/04 |
| 20 | WMWRC33482TC32362 | 02 | MINI COOPR | 11/17/03 | 15450.00 | 05/17/04 |
| 20 | WBABN53491JU32777 | 01 | BMW 330I | 12/12/03 | 20300.00 | 06/12/04 |
| 20 | SAJDA14C51LF35998 | 01 | JAG XJ8 | 09/15/03 | 28000.00 | 03/15/04 |
| 20 | WAUCB28D6XA037114 | 99 | AUDI A4 | 07/16/03 | 11200.00 | 01/16/04 |
| 20 | WDBRF61J51F037669 | 01 | MER-B C240W | 10/15/03 | 20350.00 | 04/15/04 |
| 20 | WAUDC68D01A040848 | 01 | AUDI A4 | 09/17/03 | 15800.00 | 03/17/04 |
| 20 | 4USBT33413LS42471 | 03 | BMW Z3 | 11/19/03 | 28125.00 | 05/19/04 |
| 20 | JTHBD192X20043978 | 02 | LEXUS IS300 | 12/09/03 | 17000.00 | 06/09/04 |
| 20 | SAJDA01C9YFL46128 | 00 | JAG SV8 | 09/23/03 | 24500.00 | 03/23/04 |
| 20 | 19UUA56993A047609 | 03 | ACURA 3 2TL | 11/07/03 | 21000.00 | 05/07/04 |
| 20 | WBACN53461LL49042 | 01 | BMW Z3 | 11/24/03 | 19000.00 | 05/24/04 |
| 20 | SAJDA01D3YGL49433 | 00 | JAG SV6 | 10/08/03 | 21200.00 | 04/08/04 |
| 20 | WDBLK70G1YT049701 | 00 | MER-B CL430 | 10/30/03 | 35000.00 | 04/30/04 |
| 20 | 3VWRC29M6YM052335 | 00 | VW JETTA | 08/14/03 | 6175.00 | 02/14/04 |
| 20 | 3VWSD29M51M053867 | 01 | VW JETTA | 10/08/03 | 11500.00 | 04/08/04 |
| 20 | WBADT43401GF55764 | 01 | BMW 525 | 09/05/03 | 24140.00 | 03/05/04 |
| 20 | WAUEH64B41N057817 | 01 | AUDI A6 | 10/30/03 | 17700.00 | 04/30/04 |
| 20 | WP1AB29P24LA63775 | 04 | PORSH CAYEN | 12/04/03 | 55500.00 | 06/04/04 |
| 20 | SAJDA01C2YFL64616 | 00 | JAG SV8 | 09/15/03 | 23000.00 | 03/15/04 |
| 20 | SAJDA01C3YFL65886 | 00 | JAG SV6 | 10/23/03 | 20000.00 | 04/23/04 |
| 20 | WBAAV53441FJ67460 | 01 | BMW 328I | 10/08/03 | 22500.00 | 04/08/04 |

PF1-FORWARD   PF2-BACKWARD   PF3-DLR INQ   PF5-DLR ACTIVITY TODAY   PF6-DLR MENU

CTL2 000     CTL3 000     DEALER 0018229     NAME GREAT ATLANTIC INTERNATIONAL IN

| LINE | VIN | PBI ITEM DESCRIPTION | FLOOR DT | PRIN BAL | MAT DTE |
|---|---|---|---|---|---|
| 20 | WBAFA53531LM68541 | 01BMW X5 | 09/29/03 | 28375.00 | 03/29/04 |
| 20 | WDBLJ65G8XF070094 | 99MER-B CL320 | 09/17/03 | 20075.00 | 03/17/04 |
| 20 | WDBRF64J61F073222 | 01MER-B C230W | 07/29/03 | 23350.00 | 01/29/04 |
| 20 | SAJDA01D8YGL74084 | 00JAG SV8 | 09/15/03 | 22800.00 | 03/15/04 |
| 20 | JT6GF10U1Y0078635 | 00LEXUS RX300 | 10/15/03 | 19925.00 | 04/15/04 |
| 20 | WDBRF61J51F080246 | 01MER-B C240 | 09/05/03 | 18550.00 | 03/05/04 |
| 20 | WDBLK70G21T080283 | 01MER-B CL430 | 11/12/03 | 33345.00 | 05/12/04 |
| 20 | WBABS53421JU81697 | 01BMW 328I | 10/24/03 | 29550.00 | 04/24/04 |
| 20 | WBABS53461EV85439 | 01BMW 330CI | 09/17/03 | 26150.00 | 03/17/04 |
| 20 | WBAAV33491FU86048 | 01BMW 325 | 11/25/03 | 20000.00 | 05/25/04 |
| 20 | WBABM3349YJN87282 | 00BMW 323I | 11/07/03 | 18500.00 | 05/07/04 |
| 20 | WDBRF61J31F090676 | 01MER-B C240W | 10/15/03 | 21600.00 | 04/15/04 |
| 20 | WBABM5346YJN93231 | 00BMW 328I | 09/15/03 | 22500.00 | 03/15/04 |
| 20 | WBAAV534X1JS95571 | 01BMW 328I | 11/07/03 | 23500.00 | 05/07/04 |
| 20 | SALMB11473A106116 | 03LROVR RGROV | 10/02/03 | 62500.00 | 04/02/04 |
| 20 | WAULT65B32N108120 | 02AUDI A6 | 11/19/03 | 25700.00 | 05/19/04 |
| 20 | WAUEH24B4YN110390 | 00AUDI A6 | 12/15/03 | 17400.00 | 06/15/04 |
| 20 | JT8BD68S0Y0110627 | 00LEXUS GS300 | 11/17/03 | 19610.00 | 05/17/04 |
| 20 | WDBRF61J11F111766 | 01MER-B C230W | 12/02/03 | 22550.00 | 06/02/04 |
| 20 | 3VWSC29M0YM112899 | 00VW JETTA | 08/21/03 | 9175.00 | 02/21/04 |
| 20 | WAULT68E12A116910 | 02AUDI A4 | 11/25/03 | 20500.00 | 05/25/04 |
| 20 | 4JGAB72E9XA118371 | 99MER-B ML430 | 11/25/03 | 16000.00 | 05/25/04 |
| 20 | JT6HF10U0Y0119843 | 00LEXUS RX300 | 10/15/03 | 18325.00 | 04/15/04 |
| 20 | KNAGD126025120314 | 02KIA OPTIM | 08/21/03 | 10000.00 | 02/21/04 |
| 20 | WAUED28D7WA120343 | 98AUDI A4 | 09/17/03 | 9675.00 | 03/17/04 |
| 20 | JNKCA31A6YT122521 | 00INFIN I30 | 10/24/03 | 15000.00 | 04/24/04 |
| 20 | 5GRGN23U03H122808 | 03HMMER H2 | 12/16/03 | 45000.00 | 06/16/04 |
| 20 | WAUDD68D9YA124237 | 00AUDI S4 | 12/03/03 | 19500.00 | 06/03/04 |
| 20 | WAUAC68D41A127963 | 01AUDI A4 | 12/16/03 | 14000.00 | 06/16/04 |
| 20 | JT8BD69S610133253 | 01LEXUS GS300 | 11/24/03 | 21770.00 | 05/24/04 |
| 20 | WVWMA23B6YE135084 | 00VW PASSA | 06/27/03 | 10960.00 | 12/27/03 |
| 20 | WDBLJ65G1YF135529 | 00MER-B CL320 | 07/29/03 | 24600.00 | 01/29/04 |
| 20 | 3VWSC29M5YM139998 | 00VW JETTA | 08/14/03 | 8675.00 | 02/14/04 |
| 20 | JT6HF10UXY0143499 | 00LEXUS RX330 | 11/20/03 | 18500.00 | 05/20/04 |
| 20 | JS3TD62VX24150076 | 02SUZU GRVIT | 07/07/03 | 11400.00 | 01/07/04 |
| 20 | WDBNG70JX1A152851 | 01MER-B S430 | 12/10/03 | 39600.00 | 06/10/04 |
| 20 | WDBFA67F7WF158053 | 98MER-B S320 | 08/21/03 | 34000.00 | 02/21/04 |
| 20 | JT6HF10U8Y0158986 | 00LEXUS RX300 | 10/15/03 | 21350.00 | 04/15/04 |
| 20 | WDBNG70J11A161048 | 01MER-B S430 | 12/12/03 | 36600.00 | 06/12/04 |
| 20 | WVWMA23B9YP164308 | 00VW PASSA | 07/29/03 | 7175.00 | 01/29/04 |
| 20 | 4JGAB54E6YA169524 | 00MER-B ML320 | 07/07/03 | 19310.00 | 01/07/04 |
| 20 | WAUDC68D0YA169571 | 00AUDI A4 | 11/07/03 | 14500.00 | 05/07/04 |
| 20 | WDBLJ70G72F198526 | 02MER-B CL430 | 06/26/03 | 42000.00 | 12/26/03 |
| 20 | WDBFA68F71F200521 | 01MER-B S430 | 07/15/03 | 39025.00 | 01/15/04 |
| 20 | WDBFA68F32F201781 | 02MER-B S430 | 10/15/03 | 46300.00 | 04/15/04 |
| 20 | WVWPH63B31P206607 | 01VW PASSA | 12/09/03 | 12000.00 | 06/09/04 |
| 20 | WDBJF65J61B207603 | 01MER-B E430W | 07/16/03 | 32300.00 | 01/16/04 |
| 20 | WDBJF70JX1B215328 | 01MER-B E430W | 11/18/03 | 28490.00 | 05/18/04 |

PF1-FORWARD   PF2-BACKWARD   PF3-DLR INQ   PF5-DLR ACTIVITY TODAY   PF6-DLR MENU

                                    DEALER STATUS

CTL2 000    CTL3 000    DEALER 0018229    NAME GREAT ATLANTIC INTERNATIONAL IN

| LINE | VIN | PBI | ITEM DESCRIPTION | | FLOOR DT | PRIN BAL | MAT DTE |
|------|-----|-----|------------------|--|----------|----------|---------|
| 20 | WDBKK49F01F234458 | 01 | MER-B | SLK23 | 09/05/03 | 24345.00 | 03/05/04 |
| 20 | WDBRN47J92A248550 | 02 | MER-B | C230W | 12/02/03 | 17700.00 | 06/02/04 |
| 20 | 3VWCK21Y53M300249 | 03 | VW | BEETL | 11/17/03 | 15790.00 | 05/17/04 |
| 20 | WVWMA23B5YE328956 | 00 | VW | PASSA | 08/14/03 | 10775.00 | 02/14/04 |
| 20 | 1B7FL26X81S342688 | 01 | DODGE | DAKTA | 11/12/03 | 11000.00 | 05/12/04 |
| 20 | WVWMA23B2YP352653 | 00 | VW | PASSA | 06/27/03 | 10260.00 | 12/27/03 |
| 20 | WVWMA23B6YP353840 | 00 | VW | PASSA | 08/21/03 | 9975.00 | 02/21/04 |
| 20 | 3VWED21C11M473593 | 01 | VW | BEETL | 11/12/03 | 9300.00 | 05/12/04 |
| 20 | YV1VS2551YF546759 | 00 | VOLVO | S40 | 09/05/03 | 9675.00 | 03/05/04 |
| 20 | WP0CA2985XU621638 | 99 | PORSH | BXSTR | 12/09/03 | 18000.00 | 06/09/04 |
| 20 | WP0CA298X1U624610 | 01 | PORSH | BXSTR | 10/15/03 | 25100.00 | 04/15/04 |
| 20 | WP0CA2998XS653424 | 99 | PORSH | 911 | 10/15/03 | 44000.00 | 04/15/04 |
| 20 | WP0CA2999XS655473 | 99 | PORSH | 911 | 08/21/03 | 44000.00 | 02/21/04 |
| 20 | WDBHA24G3XA721970 | 99 | MER-B | C230W | 07/29/03 | 11775.00 | 01/29/04 |
| 20 | WDBHA24G5XA782060 | 99 | MER-B | C230W | 11/25/03 | 12100.00 | 05/25/04 |
| 20 | 3VWCC21V81M801569 | 01 | VW | CABRI | 09/17/03 | 9175.00 | 03/17/04 |
| 20 | 3VWDC21V8YM804888 | 00 | VW | CABRI | 09/23/03 | 9500.00 | 03/23/04 |
| 20 | WDBHA24G6YA805573 | 00 | MER-B | C230W | 07/29/03 | 14025.00 | 01/29/04 |
| 20 | WDBHA24G9YA806006 | 00 | MER-B | C230W | 12/03/03 | 13100.00 | 06/03/04 |
| 20 | WDBHA24G9YA868098 | 00 | MER-B | C230W | 11/18/03 | 16500.00 | 05/18/04 |
| 20 | WAUBB28D2WA075000 | 98 | AUDI | A4 | 07/07/03 | 9325.00 | 01/07/04 |

PF2-BACKWARD    PF3-DLR INQ    PF5-DLR ACTIVITY TODAY    PF6-DLR MENU

## DANE & HOWE, LLP

COUNSELLORS AT LAW

45 SCHOOL STREET

BOSTON, MASSACHUSETTS 02108-3204

WALTER A. DANE (1908-1970)
GEORGE W. HOWE (1931-1972)

STEPHEN W. HOWE
JOHN T. DALEY
MICHAEL E. HAGER

(617) 227-3600

FACSIMILE
(617) 523-3362
EMAIL:
danehowe@vn.net

OF COUNSEL
JOHN V. WOODARD
ARNOLD W. HUNNEWELL
WILLIAM A. RYAN, JR.

December 10, 2003

BY MESSENGER

Great Atlantic International, Inc.
c/o Paul Marshall Harris, Esquire
Gadsby Hannah
225 Franklin Street
Boston, MA 02110

Re: Ford Motor Credit Company, d/b/a PRIMUS Financial
Services
Automotive Wholesale Plan

Dear Mr. Harris:

This office and the undersigned represent Ford Motor
Credit Company ("Ford Credit") in many local matters, and I
am writing in its behalf concerning the floorplan financing
provided the Great Atlantic dealership by Ford Credit,
doing business as PRIMUS Financial Services. This
financing is governed by the floorplan agreement executed
on March 26, 2002.

Demand is hereby made upon Great Atlantic
International, Inc. for $2,498,345.00. This amount
represents the entire indebtedness due Ford Credit under
its vehicle floorplan financing as of December 4, 2003.
Additional charges will accrue for interest and flat
charges through the date of payment.

This demand for payment is made without prejudice to
any other amounts now or hereafter owing by Great Atlantic
to PRIMUS Automotive Financial Services including but not
limited to, interest and other charges accruing after the
date set forth above, payments due or become due on any
capital loan or mortgage financing extended by Ford Credit
to Great Atlantic and not specifically covered above and
any reimbursement for return checks of other media of
payment for which credit has heretofore been given. This
demand is not a waiver of such rights as Ford Credit may

DANE & HOWE, LLP

Great Atlantic International, Inc.
c/o Paul Marshall Harris, Esquire
December 10, 2003
Page 2


have under prior demands or of any other rights it may have under the aforesaid wholesale financing agreement.

Failure to make payment as demanded may result in the repossession of all vehicles presently subject to the floorplanning, as well as the exercise by Ford Credit of any other remedy it may have pursuant to law and dealer contractual agreements.

I urge you to advise your client to act promptly to retire this indebtedness.

Very truly yours,

Michael E. Hager

MEH/ilm



# FORD MOTOR CREDIT COMPANY DBA AMERICAN SUZUKI AUTOMOTIVE CREDIT

## AUTOMOTIVE WHOLESALE PLAN
## APPLICATION FOR WHOLESALE FINANCING
## AND SECURITY AGREEMENT

To:     Ford Motor Credit Company dba American Suzuki Automotive Credit (hereinafter called "ASAC")      Date __10/24/01__

The undersigned      __Car Center USA, Inc.__
(DEALER'S EXACT LEGAL NAME)

a _____ __corporation__
(CORPORATION, PARTNERSHIP, LLC, OR OTHER ORGANIZATION)

organized under or registered in the state of __Massachusetts__ (hereinafter called "Dealer"), primarily managing its business from it chief
executive office located at _____ __70 Chelsea Street__
__Everett, MA 02149__

and with merchandise (as herein defined) located in the following state(s) as of the date hereof _____

hereby requests ASAC to establish and maintain for Dealer a wholesale line of credit to finance new, used and demonstrator motor vehicles, trucks, other vehicles and other merchandise for (hereinafter called the "Merchandise") Dealer under the terms of the ASAC Wholesale Plan as set forth in the ASAC Dealer Manual entitled "Automotive Finance Plans for Dealers" or any subsequent edition or modification thereof (hereinafter called the "Plan") and in connection therewith to make advances to or on behalf of Dealer, purchase instalment sale contracts evidencing the sale of Merchandise to Dealer by the manufacturer, distributor or other seller thereof, or otherwise extend credit to Dealer. In consideration thereof Dealer hereby agrees as follows:

### 1.     Advances by ASAC

ASAC at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise. ASAC may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. In connection with the purchase of any such contract and/or other extension of credit, ASAC may pay to any manufacturer, distributor or other seller of Merchandise the invoice or contract amount therefor, and be fully protected in relying in good faith upon any invoice, contract or other advice from such manufacturer, distributor or seller that the Merchandise described therein has been ordered or shipped to Dealer and that the amount therefor is correctly stated. Any such payment made by ASAC to any such manufacturer, distributor or seller, and any loan or other extension of credit made by ASAC directly to Dealer with respect to Merchandise of any type held by Dealer for sale, shall be an Advance made by ASAC hereunder and, except with respect to any Advance that is a purchase of an instalment sale contract, shall be repayable to Dealer in accordance with the terms hereof. All rights of ASAC and obligations of Dealer with respect to Advances hereunder that constitute the purchase by ASAC of an instalment sale contract shall be pursuant to the provisions of such contract.

From time to time ASAC shall furnish statements to Dealer of Advances made by ASAC hereunder. Dealer shall review the same promptly upon receipt and advise ASAC in writing of any discrepancy therein. If Dealer shall fail to advise ASAC of any discrepancy in any such statement within ten calendar days following the receipt thereof by Dealer, such statement shall be deemed to be conclusive evidence of advances made by ASAC hereunder unless Dealer or ASAC establishes by a preponderance of evidence that such Advances were not made or were made in different amounts than as set forth in such statement.

### 2.     Interest and Service and Insurance Flat Charges

Each Advance made by ASAC hereunder shall bear interest at the rates established by ASAC from time to time for Dealer, except that any amount not paid when due hereunder shall bear interest at a rate that is 4 percentage points higher than the current pre-default rate up to the maximum contract rate permitted by the law of the state where Dealer maintains his business as set out above. In addition to interest, the financing of Merchandise under the Plan shall be subject to service and flat charges established by ASAC from time to time for Dealer. ASAC shall advise Dealer in writing from time to time of any change in the interest rate and service and flat charges applicable to Dealer and the effective date of such change. Such change shall not become effective, however, if Dealer elects to terminate this Agreement and pay to ASAC the full unpaid balance outstanding under Dealer's wholesale line of credit and all other amounts due or to become due hereunder in good funds within ten calendar days after the receipt of such notice by Dealer.

### 3.     Payments by Dealer

The aggregate amount outstanding from time to time of all Advances made by ASAC hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time. Unless otherwise provided in the promissory note, instalment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to ASAC, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus ASAC's interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by ASAC hereunder with respect to an item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. Dealer also shall pay to ASAC, upon demand, the full amount of any rebate, refund or other credit received by Dealer with respect to the Merchandise.

If the promissory note, instalment sale contract, chattel paper, security agreement or other instrument evidencing an Advance or Advances is payable in one or more instalments, ASAC may from time to time in its sole discretion, extend any instalment due

thereunder on a month-to-month basis, and, except as provided below or in any instalment sale contract, ASAC's failure to demand any such instalment when due shall be deemed to be a one month extension of the same. Any such extension, however, shall not obligate ASAC to grant an extension in the future or waive ASAC's right to demand payment when due. Following the sale, lease or use date of an item of the Merchandise, no instalment shall be deemed extended without ASAC's specific written consent, and Dealer agrees to pay the same, as required, without demand.

### 4.    ASAC' Security Interest

As security for all Advances now or hereafter made by ASAC hereunder, and for the observance and performance of all other obligations of Dealer to ASAC in connection with the wholesale financing of Merchandise for Dealer, Dealer hereby grants to ASAC a security interest in the Merchandise now owned or hereafter acquired by Dealer, accessions thereto, accessories and replacement parts therefore, and in the proceeds and products thereof in whatever form, of any sale or other disposition of the Merchandise or other collateral, and in accounts, instruments, chattel paper, general intangibles, contract rights, documents, and supporting obligations arising from the disposition of the Merchandise or other collateral; all motor vehicles and vehicles of all types, all motor vehicle parts and accessories inventory, and all equipment, wherever located, whether now owned or hereafter acquired, and all accounts, notes receivable, insurance proceeds, chattel paper, instruments and documents relating thereto and proceeds thereof; all accounts and general intangibles including sums receivable from vendors by way of holdbacks, rebates, refunds, discounts, bonuses and the like. All fixtures and furniture. Dealer authorizes ASAC to file a financing statement(s) generally describing the Merchandise and other collateral provided hereunder.

### 5.    Dealer's Possession and Sale of Merchandise

Dealer's possession of the Merchandise financed shall be for the sole purpose of storing and exhibiting the same for sale or lease in the ordinary course of Dealer's business. Dealer shall keep the Merchandise brand new and subject to inspection by ASAC and free from all taxes, liens and encumbrances, and any sums of money that may be paid by ASAC in release or discharge of any taxes, liens or encumbrances on the Merchandise or on any documents executed in connection therewith shall be paid by Dealer to ASAC upon demand. Except as may be necessary to remove or transport the same from a freight depot to Dealer's place of business, Dealer shall not use or operate, or permit the use or operation of, the Merchandise for demonstration or otherwise without the express prior written consent of ASAC in each case, and shall not in any event use the Merchandise illegally or improperly. Dealer shall not mortgage, pledge or loan any of the Merchandise, and shall not transfer or otherwise dispose of the same except by sale or lease in the ordinary course of Dealer's business. Dealer will not move the Merchandise from the states listed above. Any and all proceeds of any sale, lease or other disposition of the Merchandise by Dealer shall be received and held by Dealer in trust for ASAC and shall be fully, faithfully and promptly accounted for and remitted by Dealer to ASAC to the extent of Dealer's obligation to ASAC with respect to the Merchandise. As used in this paragraph 5, (a) "sale in the ordinary course of Dealer's business" shall include only (i) a bona fide retail sale to a purchaser for his own use at the fair market value of the Merchandise sold, and (ii) an occasional sale of such Merchandise to another dealer at a price not less than Dealer's cost of the Merchandise sold, unless such sale is a part of a plan or scheme to liquidate all or any portion of Dealer's business, and (b) "lease in the ordinary course of Dealer's business" shall include only a bona fide lease to a lessee for his own use at a fair rental value of the Merchandise leased.

### 6.    Risk of Loss and Insurance Requirements

The Merchandise shall be at Dealer's sole risk of any loss or damage to the same, except to the extent of any insurance proceeds actually received by ASAC with respect thereto under insurance obtained by ASAC pursuant to the Plan. Dealer shall indemnify ASAC against all claims for injury or damage to persons or property caused by the use, operation or holding of the Merchandise and, if requested to do so by ASAC, maintain at its own expense liability insurance in connection therewith in such form and amounts as ASAC may reasonably require from time to time. In addition, Dealer shall insure each item of the Merchandise that is or may be used for demonstration or operated for any other purpose against loss due to collision, subject in each case to the deductible amounts and limitations set forth in the Plan.

### 7.    Credits

All funds or other property belonging to ASAC and received by Dealer shall be received by Dealer in trust for ASAC and shall be remitted to ASAC forthwith. ASAC, at all times, shall have a right to offset and apply any and all credits, monies or properties of Dealer in ASAC possession or control against any obligation of Dealer to ASAC.

### 8.    Information Concerning Dealer

To induce ASAC to extend financing accommodations hereunder, Dealer has submitted information concerning itself, its legal name, guarantors, business organization, state of incorporation or registration and financial condition, and certifies that the same is complete, true and correct in all respects and that the financial information contained therein and any that may be furnished to ASAC from time to time hereafter does and shall fairly present the financial condition of Dealer and any guarantor in accordance with generally accepted accounting principles applied on a consistent basis. Dealer agrees to notify ASAC at least 30 days prior to or promptly after receiving knowledge thereof of any merger or material change in its business organization, name, form of organization, state of incorporation or registration or financial condition or in any information relating thereto previously furnished to ASAC. Dealer acknowledges and intends that ASAC shall rely, and shall have the right to rely, on such information in extending and continuing to extend financing accommodations to Dealer. Dealer hereby authorized ASAC from time to time and at all reasonable times to examine, appraise and verify the existence and condition of all Merchandise, documents, commercial or other paper and other property in which ASAC has or has had any title, title retention, lien, security or other interest, and all of Dealer's books and records in any way relating to its business.

### 9.    Default

The following shall constitute an Event of Default hereunder:
(a) Dealer shall fail to promptly pay any amount now or hereafter owing to ASAC as and when the same shall become due and payable, or
(b) Dealer shall fail to duly observe or perform any other obligation secured hereby, or
(c) any representation made by Dealer to ASAC shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
(d) a proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer or Dealer's property.
Upon the occurrence of an Event of Default, ASAC may accelerate, and declare immediately due and payable, all or any part of the unpaid balance of all Advances made hereunder together with accrued interest and flat charges, without notice to anyone. In addition, ASAC may take immediate possession of all property in which it has a security interest hereunder, without demand or other notice and without legal process. For this purpose and in

furtherance thereof, if ASAC so requests, Dealer shall assemble such property and make it available to ASAC at a reasonably convenient place designated by ASAC, and ASAC shall have the right, and Dealer hereby authorizes and empowers ASAC, its agents or representatives, to enter upon the premises wherever such property may be and remove same. In the event ASAC acquires possession of such property or any portion thereof, as hereinbefore provided, ASAC may, in its sole discretion (i) sell the same, or any portion thereof, after at least five days' written notice or such notice as required by law, at public or private sale for the account of Dealer, (ii) declare this agreement, all wholesale transactions and Dealer's obligations in connection therewith to be terminated and canceled and retain any sums of money that may have been paid by Dealer in connection therewith, and (iii) enforce any other remedy that ASAC may have under applicable law. Dealer agrees that the sale by ASAC of any new and unused property repossessed by ASAC to the manufacturer, distributor or seller thereof, or to any person designated by such manufacturer, distributor or seller, at the invoice cost thereof to Dealer less any credits granted to Dealer with respect thereto and reasonable costs of transportation and reconditioning, shall be deemed to be a commercially reasonable means of disposing of the same. Dealer further agrees that if ASAC shall solicit bids from three or more other dealers in the type of property repossessed by ASAC hereunder, any sale by ASAC of such property in bulk or in parcels to the bidder submitting the highest cash bid therefor also shall be deemed to be a commercially reasonable means of disposing of the same. Dealer understands and agrees, however, that such means of disposal shall not be exclusive, and that ASAC shall have the right to dispose of any property repossessed hereunder by any commercially reasonable means. Dealer agrees to pay reasonable attorneys' fees and legal expenses incurred by ASAC in connection with the repossession and sale of any such property. ASAC's remedies hereunder are cumulative and may be enforced successively or concurrently.

10.   General

Dealer waives the benefit of all homestead and exemption laws and agrees that the acceptance by ASAC of any payment after it may have become due or the waiver by ASAC of any other default shall not be deemed to alter or affect Dealer's obligations or ASAC's right with respect to any subsequent payment or default.

Neither this agreement, nor any other agreement between Dealer and ASAC, or between Dealer and any manufacturer, distributor or seller that has been assigned to ASAC, nor any funds payable by ASAC to Dealer, shall be assigned by Dealer without the express prior written consent of ASAC in each case.

Witness or Attest:

Any provision hereof prohibited by any applicable law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. Except as herein provided, no modification hereof may be made except by a written instrument duly executed by, or pursuant to the express written authority of an executive officer of ASAC.

Dealer shall execute and deliver to ASAC promissory notes or other evidences of Dealer's indebtedness hereunder, security agreements, trust receipts, chattel mortgages or other security instruments and any other documents which ASAC may reasonably request to confirm Dealer's obligations to ASAC and to confirm ASAC's security interest in the Merchandise financed by ASAC under the Plan or in any other property as provided hereunder, and in such event the terms and conditions hereof shall be deemed to be incorporated therein. ASAC's security or other interest in any the Merchandise shall not be impaired by the delivery to Dealer of Merchandise or of bills of lading, certificates of origin, invoices or other documents pertaining thereto or by the payment by Dealer of any curtailment, security or other deposit or portion of the amount financed. The execution by Dealer or on

Dealer's behalf of any document for the amount of any credit extended shall be deemed evidence of Dealer's obligation and not payment thereof. ASAC may, for and in the name of Dealer, endorse and assign any obligation transferred to ASAC by Dealer and any check or other medium of payment intended to apply upon such obligation. ASAC may complete any blank space and fill in omitted information on any document or paper furnished to it by Dealer.

Unless the context otherwise clearly requires, the terms used herein shall be given the same meaning as ascribed to them under the provisions of the Uniform Commercial Code. Section headings are inserted for convenience only and shall not affect any construction or interpretation of this agreement.

This agreement shall be interpreted in accordance with the laws of the state of the Dealer's place of business set out above.

11.   Acceptance and Termination

Dealer waives notice of ASAC's acceptance of this agreement and agrees that it shall be deemed accepted by ASAC at the time ASAC shall first extend credit to Dealer under the Plan. This agreement shall be binding on Dealer and ASAC and their respective successors and assigns and shall bind all persons who become bound as a debtor to this agreement from the date thereof until terminated by receipt of a written notice by either party from the other, except that any such termination shall not relieve either party from any obligation incurred prior to the effective date thereof.

Car Center USA, Inc.
(DEALER'S EXACT BUSINESS NAME)

04-3556824
(FEDERAL EMPLOYER TAX ID NUMBER)

(DEALER'S STATE ORGANIZATION ID NUMBER)

By _____ President
Title

## POWER OF ATTORNEY FOR WHOLESALE

KNOW ALL MEN BY THESE PRESENTS: That the undersigned dealer does hereby make, constitute and appoint D.W. Sneddon, K.S. Holl and K.L. Parsons, all of Franklin, Tennessee and each of them and any other officer or employee of Ford Motor Credit Company dba American Suzuki Automotive Credit (hereinafter called "American Suzuki Automotive Credit") of Franklin, Tennessee, its true and lawful attorneys with full power of substitution, for and in its name, stead and behalf, to prepare, make, execute, acknowledge and deliver to American Suzuki Automotive Credit from time to time promissory notes or other evidences of indebtedness, bearing such rate of interest as American Suzuki Automotive Credit may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments or documents necessary or appropriate in connection with the wholesale financing by American Suzuki Automotive Credit of merchandise for the undersigned dealer under the terms of the American Suzuki Automotive Credit Automotive Wholesale Plan, and generally to perform all acts and to do all things necessary or appropriate in discharge of the power hereby conferred, including the making of affidavits and the acknowledging of instruments, as if fully done by the undersigned dealer, and each of the said attorneys hereby is further authorized and empowered in the discharge of the power hereby conferred to execute any instruments by means of either a manual, imprinted or other facsimile signature or by completing a printed form to which an imprinted or other facsimile signature is then affixed.

This Power of Attorney is executed by the undersigned dealer to induce American Suzuki Automotive Credit to make advances for merchandise to be acquired by the undersigned dealer and recognizes that such advances are made to manufacturers, distributors and other sellers of such merchandise at places other than the undersigned dealer's place of business, and that it is impractical for the undersigned dealer to execute the promissory notes, trust receipts, chattel mortgages and other title, retention or security instruments necessary or appropriate in connection with such advances without unduly delaying the delivery of such merchandise to the undersigned dealer. Accordingly, this Power of Attorney may be revoked by the undersigned dealer only by notice in writing addressed to American Suzuki Automotive Credit, Franklin, Tennessee by registered mail, return receipt requested, stating an effective date on or after the receipt thereof by American Suzuki Automotive Credit

Dated this 24TH day of OCT. , 2001

Witness or Attest:

Steve McAlten

Car Center USA, Inc.

By JAMACI President
                        Title


State of MASSACHUSETTS

County of _____

On this 24th day of October , 200?, before me, the undersigned Notary Public, personally appeared _____

who acknowledged himself to be the _____ (TITLE) of Car Center USA, Inc. _____ (DEALER'S NAME)

the grantor of the foregoing Power of Attorney, and that he, being authorized so to do, executed the foregoing Power of Attorney for the

purposes therein contained, by signing the name of the said grantor by himself in the capacity indicated.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

Mari C. Caruo
                        NOTARY PUBLIC

(NOTARY'S SEAL)

My commission expires September 27, 2007

## CERTIFIED COPY OF RESOLUTION OF BOARD OF DIRECTORS

The undersigned hereby certifies that he is the Secretary of _____ Car Center USA, Inc. _____
                                                                    (DEALER'S EXACT CORPORATE NAME)

of _____ 70 Chelsea Street ____ Everett, MA 02149 _____
                                                (DEALER'S ADDRESS)

and that the following is a true, correct and complete copy of resolutions adopted by the board of directors of the said corporation at a meeting duly called and held on _____ 10-23 _____, 20 0 1, at which a quorum was present and voting, and that said resolutions are unchanged and are now in full force and effect:

RESOLVED, That the officers of this corporation be, and each hereby is, authorized and empowered to execute and deliver on behalf of this corporation an Application for Wholesale Financing to Ford Motor Credit Company dba American Suzuki Automotive Credit (hereinafter called "American Suzuki Automotive Credit") of Franklin, Tennessee. In such form and upon such terms and conditions as the said American Suzuki Automotive Credit may require, and to execute and deliver from time to time promissory notes or other evidences of indebtedness, bearing such rate of interest as the said American Suzuki Automotive Credit may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments or documents as, and in such form as, the said American Suzuki Automotive Credit may require, evidencing any financing extended by the said American Suzuki Automotive Credit to this corporation under the terms of the American Suzuki Automotive Credit Automotive Wholesale Plan.

FURTHER RESOLVED, That D.W. Snedden, K.S. Holl and K.L. Parsons, all of Franklin, Tennessee, and each of them and any other officer or employee of the said Ford Motor Credit Company, a Delaware corporation, dba American Suzuki Automotive Credit be and each of them hereby is constituted and appointed an attorney-in-fact of this corporation for the purposes set forth in the Power of Attorney presented to this board of directors this date, with full power of substitution, and the officers of this corporation are, and each of them hereby is, authorized and empowered to execute a formal Power of Attorney in such form.

FURTHER RESOLVED, That the officers of this corporation be, and each hereby is, authorized and empowered to do all other things and to execute all other instruments and documents necessary or appropriate in the premises.

IN WITNESS WHEREOF I have hereunto set may hand and affixed the corporate seal of the said corporation this 24TH day of OCT, 200 1.

_____
                    SECRETARY

CORPORATE SEAL

## UCC FINANCING STATEMENT
FOLLOW  INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Ford Motor Credit Company
Attn:  Gail Vannatta  610
P.O. Box 680020
Franklin, TN  37068-0020

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Car Center USA, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 70 Chelsea Street | Everett | MA | 02149 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 04-3556824 | | corporation | Massachusetts | *NONE*  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ford Motor Credit Company, a Delaware Corporation dba American Suzuki Automotive Credit | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 680020 | Franklin | TN | 37068-0020 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Motor vehicles and vehicles of all types, all motor vehicles parts and
accessories inventory, and all equipment, wherever located, whether now
owned or hereafter acquired, and all accounts, chattel paper,
instruments, and documents relating thereto; all accounts and all
general intangibles including sums receivable from vendors by way of
holdbacks, rebates, refunds, discounts, bonuses and the like.
All fixtures and furniture.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 4818-2-0 | | | | | | |

NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

REORDER FROM
Registré, Inc.
514 PIERCE ST.
P.O. BOX 318
ANOKA, MN 56303
(763) 421-1713

MAR 21 '02 13:06 FR PRIMUS DEALER CREDIT 615 315 6851 TO 916176243891    P.08/10
MAR 21 '02 11:47 FR BOSTON WHOLESALE    617 849 5393 TO 916153157984    P.01/02

▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

    Ford Motor Credit Company
    Attn: Gail Vannatta  610
    P.O. Box 680020
    Franklin, TN  37068-0020

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Car Center USA, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 70 Chelsea Street | Everett | MA | 02149 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 04-3556824 | | corporation | Massachusetts | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ford Motor Credit Company, a Delaware Corporation dba PRIMUS Financial Services | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 680020 | Franklin | TN | 37068-0020 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

    A.  All furniture, fixtures, machinery, supplies and other equipment.

    B.  All motor vehicles, tractors, trailers, implements, service parts
        and accessories and other inventory of every kind.

    C.  All accounts, contract rights, chattel paper and general intangibles.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. | | | | | | |

| 8. OPTIONAL FILER REFERENCE DATA | | | | |
|---|---|---|---|---|

MAR 27 '02 16:14 FR BOSTON WHOLESALE    617 849 5393 TO 916176243891    P.10/10

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> John V. Carolan, Branch Manager
> Ford Motor Credit Company
> 25 Braintree Hill Office Park
> Braintree, MA 02184

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Car Center USA, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 70 Chelsea Street | Everett | MA | 02149 | USA |
| 1d. TAX ID # SSN OR EIN | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| 04-3556824 | ORGANIZATION DEBTOR | Corporation | Massachusetts | 01074046 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID # SSN OR EIN | ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | ORGANIZATION DEBTOR | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ford Motor Credit Company | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 25 Braintree Hill Office Park | Braintree | MA | 02184 | USA |

4. This FINANCING STATEMENT covers the following collateral:

1. Furniture, machinery, service vehicles, supplies, and other equipment.

2. Motor vehicles, tractors, trailers, service parts and accessories, and other inventory.

3. Accounts, contract rights, chattel paper, and general intangibles.

4. Fixtures located at the real property known as 70 Chelsea Street, Everett, Massachusetts.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. THIS FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum (if applicable) | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

22737-5-0

** TOTAL PAGE.10 **

```
COMPANY  43   PRIMUS REGION
REGION   004  BOSTON REGION
STATE    020  MASSACHUSETTS

                DEALER FLOORPLAN SYSTEM          *CL41TB43*        PAGE NO              11
              WHOLESALE DEALER SUMMARY           WEDNESDAY         CAPTURE DATE 12/17/03
                 REPORT NUMBER - 91                                PROCESS THRU 12/17/03
***********************************************************************************************
 CONT                                                           APPROVED      AVAILABLE   EXP *
 ID  MFR LINE  YR  UNITS    AMOUNT                             COMMITMENT      LINE       DATE *
***********************************************************************************************

DEALER  0077089 CAR CENTER USA INC

AFS      00 TOTALS       0        0.00                               0            0.00

        SUZ 01 2002      4     74,207.64
               2003     25    536,274.20
               TOTALS    29    610,481.84                     1,000,000     389,518.16  11/30/03
                                                                100,000     100,000.00  11/30/03

        PGM 11 TOTALS    0        0.00

        DEM 30 2002      3    53,530.25
               TOTALS    3    53,530.25                          50,000      3,530.25-  11/30/03

        DEALER TOTALS   32   664,012.09                      1,150,000     485,987.91
```

DEALER STATUS

CTL2 000    CTL3 000    DEALER 0077089    NAME CAR CENTER USA INC

| LINE | VIN | PBI | ITEM DESCRIPTION | FLOOR DT | PRIN BAL | MAT DTE |
|---|---|---|---|---|---|---|
| 01 | JS3TD62V034105083 | | 03SUZ    GV | 05/30/03 | 20842.96 | 05/30/05 |
| 01 | JS3TD62V134105156 | | 03SUZ    GV | 05/30/03 | 20842.96 | 05/30/05 |
| 01 | 2S3TD52V636105758 | | 03SUZ    V4D | 06/02/03 | 18402.96 | 06/02/05 |
| 01 | JS3TD62VX34105785 | | 03SUZ    GV | 05/30/03 | 20842.96 | 05/30/05 |
| 01 | JS2RA41S125105797 | | 02AERIO  S AT | 11/25/02 | 14669.96 | 05/10/04 |
| 01 | JS3TX92V424107118 | | 02XL-7 4WD STA | 11/25/02 | 21751.76 | 11/01/03 |
| 01 | JS3TX92V834108550 | | 03SUZ    XL7 | 05/30/03 | 23623.76 | 05/30/05 |
| 01 | 2S3TD52VX26109035 | | 02VITARA 4D  JL | 11/25/02 | 17442.96 | 05/01/04 |
| 01 | JS3TX92V734110905 | | 03SUZ    XL7 | 05/30/03 | 22219.76 | 05/30/05 |
| 01 | JS3TX92VX34113149 | | 03SUZ    XL7 | 06/02/03 | 25279.76 | 06/02/05 |
| 01 | JS3TX92V934113160 | | 03SUZ    XL7 | 05/28/03 | 25279.76 | 05/28/05 |
| 01 | JS3TX92V834113165 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 05/30/05 |
| 01 | JS3TX92V334113462 | | 03SUZ    XL7 | 05/30/03 | 22723.76 | 05/30/05 |
| 01 | JS3TX92V034113483 | | 03SUZ    XL7 | 05/30/03 | 22723.76 | 05/30/05 |
| 01 | JS3TX92V334113655 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 05/30/05 |
| 01 | JS3TX92V634113696 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 05/30/05 |
| 01 | JS3TX92V834113697 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 05/30/05 |
| 01 | JS3TX92V034113726 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 05/30/05 |
| 01 | JS3TX92V634113763 | | 03SUZ    XL7 | 05/30/03 | 22723.76 | 05/30/05 |
| 01 | JS3TX92VX34113779 | | 03SUZ    XL7 | 05/30/03 | 25279.76 | 06/02/05 |
| 01 | JS3TX92V134113931 | | 03SUZ    XL7 | 06/02/03 | 20342.96 | 06/28/04 |
| 01 | JS3TD62V724160340 | | 02GRAND  VITARA | 11/25/02 | 14689.96 | 05/28/05 |
| 01 | JS2RA41S035168830 | | 03SUZ    AERIO | 05/28/03 | 14689.96 | 05/28/05 |
| 01 | JS2RA41S435168863 | | 03SUZ    AERIO | 05/28/03 | 14689.96 | 05/28/05 |
| 01 | JS2RA41S135168920 | | 03SUZ    AERIO | 05/28/03 | 17089.96 | 08/15/04 |
| 01 | JS2RD41H635200384 | | 03AERIO SX AWD | 11/25/02 | 17549.96 | 09/19/04 |
| 01 | JS2RD41H335201377 | | 03AERIO SX AWD | 11/25/02 | 17549.96 | 09/19/04 |
| 01 | JS2RD41H635201468 | | 03AERIO SX AWD | 11/25/02 | 17549.96 | 09/20/04 |
| 01 | JS2RD41H935201559 | | 03AERIO SX AWD | 11/25/02 | 17239.72 | 02/25/04 |
| 30 | JS3TX92V724118050 | | 02XL-7 4WD PLU | 11/25/02 | 18987.72 | 06/28/04 |
| 30 | JS3TX92V324121642 | | 02XL-7 4WD LTD | 11/25/02 | 17302.81 | 02/25/04 |
| 30 | JS3TD62V924155947 | | 02G VITARA JLX | 11/25/02 | | |

PF2-BACKWARD    PF3-DLR INQ    PF5-DLR ACTIVITY TODAY    PF6-DLR MENU

DANE & HOWE, LLP
COUNSELLORS AT LAW
45 SCHOOL STREET
BOSTON, MASSACHUSETTS 02108-3204

(617) 227-3600

WALTER A. DANE (1908-1970)
GEORGE W. HOWE (1931-1972)

STEPHEN W. HOWE
JOHN T. DALEY
MICHAEL E. HAGER

FACSIMILE
(617) 523-3362
EMAIL:
danehowe@wn.net

OF COUNSEL
JOHN V. WOODARD
ARNOLD W. HUNNEWELL
WILLIAM A. RYAN, JR.

December 10, 2003

BY MESSENGER

Car Center USA, Inc.
c/o Paul Marshall Harris, Esquire
Gadsby Hannah
225 Franklin Street
Boston, MA 02110

> Re:  Ford Motor Credit Company, d/b/a American Suzuki
>      Automotive Credit
>      <u>Automotive Wholesale Plan</u>

Dear Mr. Harris:

This office and the undersigned represent Ford Motor Credit Company ("Ford Credit") in many local matters, and I am writing in its behalf concerning the floorplan financing provided the Car Center USA dealership by Ford Credit, doing business as American Suzuki Automotive Credit. This financing is governed by the floorplan agreement executed on October 24, 2001.

Demand is hereby made upon Car Center USA, Inc. for $664,012.09. This amount represents the entire indebtedness due Ford Credit under its vehicle floorplan financing as of December 4, 2003. Additional charges will accrue for interest and flat charges through the date of payment.

This demand for payment is made without prejudice to any other amounts now or hereafter owing by Car Center USA to Ford Credit including but not limited to, interest and other charges accruing after the date set forth above, payments due or become due on any capital loan or mortgage financing extended by Ford Credit to Car Center USA and not specifically covered above and any reimbursement for return checks of other media of payment for which credit has heretofore been given. This demand is not a waiver of such rights as Ford Credit may have under prior demands or of

DANE & HOWE, LLP

Car Center USA, Inc.
c/o Paul Marshall Harris, Esquire
December 10, 2003
Page 2


any other rights it may have under the aforesaid wholesale
financing agreement.

Failure to make payment as demanded may result in the
repossession of all vehicles presently subject to the
floorplanning, as well as the exercise by Ford Credit of
any other remedy it may have pursuant to law and dealer
contractual agreements.

I urge you to advise your client to act promptly to
retire this indebtedness.

Very truly yours,

Michael E. Hager


MEH/ilm