UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

2003 DEC 19 A 11:45

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION
NO.

**03   12556 WGY**

FORD MOTOR CREDIT COMPANY, )
d/b/a PRIMUS FINANCIAL SERVICES and )
AMERICAN SUZUKI AUTOMOTIVE CREDIT, )
  )
  Plaintiff )
  )
v. )      AFFIDAVIT OF
  )      JOHN V. CAROLAN
GREAT ATLANTIC INTERNATIONAL, INC., )
and )
CAR CENTER USA, INC., )
  )
  Defendants )

I, John V. Carolan, do depose and say that:

1. At all times relevant hereto I have been serving continuously as the branch manager of the Braintree, Massachusetts offices of PRIMUS Financial Services and American Suzuki Automotive Credit, financing divisions within Ford Motor Credit Company ("Ford Credit"), a Delaware corporation with its principal place of business at One American Road, Dearborn, Michigan.

2. In that capacity I am the person responsible for the financing and related account records for the wholesale financing provided by Ford Credit as PRIMUS to Great Atlantic International, Inc. and for the wholesale financing provided by Ford Credit as American Suzuki Automotive Credit to Car Center USA, Inc.

3. I make this affidavit in support of the application of Ford Motor Credit Company for a preliminary injunction in the above-captioned action.

4. PRIMUS' used car financing of Great Atlantic International, Inc. has been pursuant to a wholesale financing agreement dated March 26, 2002.

5. American Suzuki's new car financing of Car Center USA, Inc. has been pursuant to a wholesale financing agreement dated October 24, 2001.

6. Throughout the course of dealing with Great Atlantic and Car Center USA, Ford Credit has found both to be high-maintenance accounts. The dealers have provided very questionable financial statements, which raise questions that the dealers cannot explain and which deny Ford Credit the ability to make a proper evaluation of its position as a creditor. In addition, the dealers have created a recurring pattern of making payoff payments which have been dishonored and have required replacement with certified funds. Over the past six months Ford Credit has uncovered information through auditing indicating that the dealers have misrepresented the delivery dates of vehicles subject to wholesale financing in order to extend the required deadline for payoffs to Ford Credit (five business days).

7. In September 2002 PRIMUS notified Great Atlantic that it no longer wished to continue the financing relationship and that

14. The collateral at Great Atlantic covered by the PRIMUS financing presently consists of 117 used vehicles, the total value of which is depreciating.

15. The collateral at Car Center USA covered by the American Suzuki financing presently consists of 32 new vehicles whose total value is depreciating.

16. Both PRIMUS and American Suzuki are undersecured and need to recover and dispose of the vehicle collateral as soon as possible to reduce the respective indebtedness of Great Atlantic and Car Center USA.

Signed and sworn to under the pains and penalties of perjury this _18_ day of December, 2003.

_____
John V. Carolan

DRAFT (July 28, 2003)

## FORBEARANCE AGREEMENT

This Forbearance Agreement ("Forbearance Agreement") is entered into by Ford Motor Credit Company dba PRIMUS Financial Services ("PRIMUS"), a Delaware corporation, Great Atlantic International, Inc., a Massachusetts corporation, Car Center USA, dba Suzuki of Boston, a Massachusetts corporation, and NASA Realty Trust (collectively, "Dealer") and Nader Jamali Afoussi and Ardeshir Jamali Afoussi ("Guarantors") as of this ____ day of August, 2003.

A. Car Center USA, dba Suzuki of Boston, entered into an Automotive Wholesale Plan Application for Wholesale Plan Application for Wholesale Financing and Security Agreement ("Wholesale Agreement") with PRIMUS dated _10/24/01_. On March 26, 2002, Great Atlantic International, Inc. entered into a separate Wholesale Agreement with PRIMUS (collectively, the Wholesale Agreements and related documentation of the relationship between Dealer and PRIMUS, including the Mortgage Loan documents and the guaranties described below, are referred to as the "Agreements").

B. On or about March 26, 2002, NASA Realty Trust entered into a loan and security agreement whereby PRIMUS extended to Dealer additional financial accommodations in the amount of One Million Five Hundred and Fifty Thousand Dollars ($1,550,000.00) (the "Mortgage Loan").

C. In consideration of the loans under the Agreements and to secure Dealer's obligations to PRIMUS, Dealer granted PRIMUS a security interest in certain of Dealer's inventory of motor vehicles, proceeds of the motor vehicles as described in the Agreements (the "Collateral").

D. To induce PRIMUS to enter into the Agreements, Guarantors executed continuing guaranties of the obligations of Dealer to PRIMUS dated March 26, 2002 (the "Guaranties"). _10/24/01_

E. On September 2, 2002, PRIMUS notified Dealer that it would terminate the Wholesale Agreements effective December 31, 2002, and it notified the Dealer to obtain an alternative finance source. This deadline was extended first to January 31, 2003, then to May 31, 2003, and finally to July 31, 2003.

E. Dealer has been seeking an alternative finance source but has so far not been able to secure the same. Dealer and Guarantors have asked PRIMUS to forbear from exercising its rights under the Agreements. PRIMUS has no obligation to make any further advances under the Agreements and has the current right to exercise its rights under the Agreements to terminate financing. Although PRIMUS is under no obligation to do so, it is willing to forbear from doing so under certain conditions further described in this Forbearance Agreement.

NOW THEREFORE, in consideration of the mutual advantages and benefits accruing to the parties and described herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Dealer shall diligently pursue financing with an alternative finance source, and in any event by no later than October 31, 2003.

2. Dealer shall have until October 31, 2003 (the "Forbearance Period") to pay PRIMUS in full for all obligations due PRIMUS upon termination of the credit relationship:

   | | |
   |---|---:|
   | Wholesale Outstanding: | |
   | Car Center USA, Inc. dba Suzuki of Boston | $1,073,021.33 |
   | Great Atlantic International, Inc. | 2,486,040.00 |
   | Mortgage Loan Balance: | 1,407,642.85 |
   | SUBTOTAL | $4,966,704.18 |

   Not included in these calculations and also due PRIMUS are PRIMUS's attorneys' fees and costs, if any, of enforcing its rights under the Agreements and to protect its collateral. The parties agree that these amounts will change as charges accrue (including interest at the applicable default rate), vehicles are sold and proceeds paid to PRIMUS, and the like. Upon a default, if any, under this Agreement, Dealer shall continue to be responsible for all additional attorney fees and costs actually incurred.

3. There shall be no defaults under any of the Agreements or in any of the obligations described in this Forbearance Agreement to PRIMUS during the Forbearance Period. If any such default arises, the Forbearance Period shall automatically terminate and the entire amount due under paragraph 2, above, less any payments received, together with interest and other charges from such payment due dates shall be immediately due and owing.. The Forbearance Agreement shall also automatically terminate if (a) any action is brought against Dealer or the Guarantors or any other litigant, (b) any action, litigation or otherwise, is taken by another creditor of Dealer or the Guarantors against any of them or against their assets, or (c) a significant amount, in number or value, of the assets of Dealer or either of the Guarantors is transferred, whether by sale, encumbrance, gift or otherwise.

4. PRIMUS shall have at all times, upon reasonable notice, the right to enter into and upon the dealership premises or where any of PRIMUS' collateral or records with respect to such collateral are located for the purpose of inspecting the same, making copies of records, observing the use of any part of said collateral, physically auditing the collateral or otherwise protecting PRIMUS' security interest in its collateral.

NOW THEREFORE, in consideration of the mutual advantages and benefits accruing to the parties and described herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Dealer shall diligently pursue financing with an alternative finance source, and in any event by no later than October 31, 2003.

2. Dealer shall have until October 31, 2003 (the "Forbearance Period") to pay PRIMUS in full for all obligations due PRIMUS upon termination of the credit relationship:

   | | |
   |---|---:|
   | Wholesale Outstanding: | |
   | Car Center USA, Inc. dba Suzuki of Boston | $1,073,021.33 |
   | Great Atlantic International, Inc. | 2,486,040.00 |
   | Mortgage Loan Balance: | 1,407,642.85 |
   | SUBTOTAL | $4,966,704.18 |

   Not included in these calculations and also due PRIMUS are PRIMUS's attorneys' fees and costs, if any, of enforcing its rights under the Agreements and to protect its collateral. The parties agree that these amounts will change as charges accrue (including interest at the applicable default rate), vehicles are sold and proceeds paid to PRIMUS, and the like. Upon a default, if any, under this Agreement, Dealer shall continue to be responsible for all additional attorney fees and costs actually incurred.

3. There shall be no defaults under any of the Agreements or in any of the obligations described in this Forbearance Agreement to PRIMUS during the Forbearance Period. If any such default arises, the Forbearance Period shall automatically terminate and the entire amount due under paragraph 2, above, less any payments received, together with interest and other charges from such payment due dates shall be immediately due and owing.. The Forbearance Agreement shall also automatically terminate if (a) any action is brought against Dealer or the Guarantors or any other litigant, (b) any action, litigation or otherwise, is taken by another creditor of Dealer or the Guarantors against any of them or against their assets, or (c) a significant amount, in number or value, of the assets of Dealer or either of the Guarantors is transferred, whether by sale, encumbrance, gift or otherwise.

4. PRIMUS shall have at all times, upon reasonable notice, the right to enter into and upon the dealership premises or where any of PRIMUS' collateral or records with respect to such collateral are located for the purpose of inspecting the same, making copies of records, observing the use of any part of said collateral, physically auditing the collateral or otherwise protecting PRIMUS' security interest in its collateral.

5. PRIMUS shall have the right to retain physical possession of all Manufacturers' Statements of Origin and/or titles to all vehicle inventory.

6. Dealer agrees, upon default or termination of the Forbearance Period and request by PRIMUS, to waive any objection to and to voluntarily surrender to PRIMUS physical or constructive possession of the non-real estate collateral securing Dealer's obligations to PRIMUS. Dealer and the Guarantors hereby acknowledge that the surrender of the collateral does not discharge or release Dealer or the Guarantors from their obligations to PRIMUS except to the extent of the net proceeds of the sale of the collateral applied to those obligations. Dealer and the Guarantors hereby waive notice of public or private sale and authorize PRIMUS to sell the collateral, in bulk or in parcels as PRIMUS may elect, in any commercially reasonable manner or way, including but not limited to any of the following methods of sale (which methods are agreed to be commercially reasonable):

    a. sale to the manufacturer or any distributor thereof for the new wholesale value thereof less any rebates withheld by the manufacturer and reconditioning and relocating costs and expenses;

    b. return to the manufacturer or distributor thereof pursuant to any agreements between Dealer and such manufacturer or distributor, the rights under which agreements are hereby assigned by Dealer to PRIMUS;

    c. sale at any wholesale auction whether public or private; or

    d. sale at a private sale to the highest bidder.

    Any net surplus for the sale of collateral shall be paid to Dealer unless otherwise required by law.

7. By entering into this Forbearance Agreement, PRIMUS is not waiving existing defaults, if any, or future defaults, monetary or otherwise, nor any remedies available to it or any amounts due or to become due and owing to PRIMUS.

8. The parties acknowledge that as of the date of this Forbearance Agreement, (a) the Agreements are valid and enforceable and in full force and effect as written; (b) PRIMUS is not obligated to continue its financing relationship with Dealer; and (c) PRIMUS has the right to terminate the Wholesale Agreement and any other financing relationship with Dealer at the end of the Forbearance Period, upon the termination of the Forbearance Agreement, or upon default by Dealer.

9. The parties may have discussions regarding various courses of action that may be in the parties' mutual interest without liability for failing to do so. Each of the parties to this Forbearance Agreement, in the sole discretion of each of them, may terminate these discussions and this Forbearance Agreement at any time and for any reason including, but not limited to, any default by Dealer or the Guarantors in any of their obligations to

PRIMUS under the Agreements or under this Forbearance Agreement. Upon such termination, the respective obligations of the parties to one another shall be only as set forth in the Agreements, in paragraphs 3 and 6 of this Forbearance Agreement, and any other written documents then in effect between the parties.

10. Our contemplated discussions may be lengthy and complex. While the parties to the Forbearance Agreement may reach agreement on one or more preliminary issues which are part of the larger problem we are trying to resolve, no party will be bound by any agreement on any individual issues until (a) agreement is reached on all issues, and (b) such agreement on all issues has been reduced to a written document signed by all parties. In order to avoid any confusion or misunderstanding, such an agreement and this Forbearance Agreement may only be amended in writing.

11. No negotiations or other actions undertaken pursuant to this Forbearance Agreement will constitute a waiver of PRIMUS' rights under the Agreements, except to the extent specifically stated in a writing signed by all parties.

12. Dealer understands that no further advances shall be made under the Wholesale Agreement with the exception that PRIMUS will consider financing vehicle units for which Dealer has a firm customer's order provided such orders are submitted to PRIMUS for prior approval.

13. Dealer and Guarantors (on its/their own behalf and on behalf of its/their respective heirs, successors and assignees) irrevocably and generally release PRIMUS and its parent corporation, subsidiaries, successors, assignees, officers, directors, representatives, agents, attorneys, employees and related entities from any and all liabilities of any kind or nature, whether known or unknown, absolute or contingent, heretofore arising from or related to the Forbearance Agreement or the Agreements. This paragraph shall survive any termination under Paragraph 10 of this Forbearance Agreement.

14. This Forbearance Agreement constitutes the entire agreement of the parties concerning its subject matter and supersedes any prior or contemporaneous representations or oral agreements concerning the subject matter of this Forbearance Agreement and may not be amended, waived or modified in any manner without the written consent of all the parties hereto.

15. This Forbearance Agreement inures to the benefit of and is binding upon each of the parties and their respective heirs, successors and assigns.

16. This Forbearance Agreement is governed by Massachusetts law. It may be executed in one or more counterparts, each of which constitutes an original and all of which, when taken together, constitute one agreement.

17. By execution of this Forbearance Agreement, the Guarantors reaffirm their Guaranty, including a guaranty of the obligations described in this Forbearance Agreement.

18. In case any provision of this Forbearance Agreement shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this agreement and the validity, legality and enforceability of the remaining shall not in any way be affected or impaired thereby.

19. **EACH PARTY HEREBY WAIVES ITS RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS FORBEARANCE AGREEMENT.**

FORD MOTOR CREDIT COMPANY dba
PRIMUS FINANCIAL SERVICE

By: _____

Name: _____

Title: _____

GREAT ATLANTIC INTERNATIONAL, INC.

By: _____

Name: _____

Title: _____

CAR CENTER USA, INC. dba
SUZUKI OF BOSTON

By: _____

Name: _____

Title: _____

NASA Realty Trust

By: _____

Name: _____

Title: _____

_____
NADER JAMALI AFOUSSI

_____
ARDERSHIR JAMALI AFOUSSI