UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> GREAT ATLANTIC INTERNATIONAL, INC. and CAR CENTER USA, INC., <br><br> Defendants. | C. A. No. 03-12556 WGY |

## AFFIDAVIT OF PAUL MARSHALL HARRIS IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR CONTINUANCE

I, Paul Marshall Harris, hereby state as follows:

1. I am a partner at the law firm of Gadsby Hannah, LLP and am lead counsel representing defendants, Great Atlantic International Inc. and Car Center USA Inc., in this litigation.

2. I have been practicing law for approximately twenty-six (26) years. During the past approximately seventeen (17) years of my practice, I have concentrated my practice in representing numerous entities with regard to all aspects of the automobile industry, including issues such as the issues that arise in this particular litigation. In particular, I have been legal counsel for General Motors Acceptance Corporation, Chrysler Credit Corporation and Navistar Financial Corporation and thus, am well conversed with the issues that arise in a case such as this matter.

3. As part of this affidavit I attach the Deposition of John Carolan dated Friday, January 9, 2004, which I state is a true and accurate copy based on the fact that we retained Registered Professional Reporter Laurie K. Langer to take the transcript of the deposition of Mr.

John Carolan and to transcribe it on an expedited basis. (Carolan Deposition, Page 2[1]). In this affidavit I will refer to various portions of Mr. Carolan's deposition.

4.  On January 5, 2004, I received from the client a copy of the complaint that had been served by plaintiff's counsel, Michael E. Hager. The copy of the complaint did not have any indication of the date that it was served, and the client was not adequately sure to my satisfaction of the date the complaint had been served. I therefore called Attorney Hager and we passed telephone calls back and forth for the first couple of days. I later learned from Attorney Hager that the complaint had been served on December 29, 2003 and that the answer is due on January 20, 2004.[2]

5.  On Thursday, January 8, 2004, while attending a meeting outside of the office on another matter, I received an emergency call from an associate at my office informing me that Attorney Hager had called, and that the Court's clerk had instructed the parties to appear at 2 p.m. on Thursday, January 8, 2004, and be ready for trial on Friday, January 9, 2004. The associate stated that she had confirmed the information with the clerk herself.

6.  On Thursday, January 8, 2004 when I received notice that the Court wanted us to make an appearance that afternoon and that the preliminary injunction hearing would be consolidated with trial, we had every intention of accommodating the Court's wishes as best we could. In fact, I did not attend a parent-teacher's conference for my youngest son which was scheduled over two months ago, but instead appeared before the Court on Thursday, January 8, 2004 at 2 p.m.

---

[1] The page referred to is the transcript page number. The page number on each page of the printed out version presented to the Court and attached to this Affidavit on the bottom, center of the page is to be IGNORED. Because it is an expedited transcript which was sent by e-mail to our office on late Saturday afternoon, the page reference in the bottom, center is the number that our printer gives to the page. It is, however, not the correct reference. Affiant will always be referring to the transcript page number ASSIGNED BY THE STENOGRAPHER.

[2] The twentieth day would be January 19, 2004 which is the day that Martin Luther King, Jr's Birthday is observed and thus, the answer is due on the next business day January 20, 2004.

2

7. On Friday afternoon, January 9, 2004, in an effort to accommodate the Court's request that we be ready for trial on this matter by Monday, January 12, 2004, with the assistance of Kristin Cataldo, an associate in this office, and the cooperation of plaintiff's counsel, I took the deposition of John Carolan, The Regional Manager of the New England Office of plaintiff, Primus. (Carolan Deposition, Page 7, Lines 5 – 8).

8. On Friday afternoon, as a result of taking the deposition of John Carolan, it became quite apparent that, although many of these types of cases are "black and white", this in fact was not a "black and white" case. In many similar cases, the issue is simply that the defendant has failed to make adequate payments, and thus is in default on the loan to the finance company. Obviously, those cases tend to be rather "black and white". In this case, however, the plaintiff acknowledges that payments have been made in full and that defendants are not in default on any payments. (Carolan Deposition, Page 93, Lines, 18-23).

9. Rather the plaintiff maintains that one of the reasons that the defendants are in default on the loan is because over the course of the relationship, which began in March of 2001, there have been approximately fifteen (15) payments, out of the approximate one thousand payment transactions that defendants have made to plaintiff, that were returned to the plaintiff for insufficient funds. (Carolan Deposition, Page 96, Lines 9 – 14, Page 97, Lines 17 -23, Page 98, Lines 8 - 15). The plaintiff's witness, Mr. Carolan, acknowledges however that all of the payments for insufficient funds were made good within a 48 hour notice after defendants' receipt that the payments were returned for insufficient funds. (Carolan Deposition, Page 66, Lines 1 -2; Page 93, Lines 12-17 and Lines 21-24). The plaintiff's witness further acknowledges that other dealers who have provided payments that were returned for insufficient funds have not been terminated. (Carolan Deposition, Page 93, Lines 6 -8).

10. The plaintiff's witness also acknowledged that, with respect to several of the insufficient payments, the plaintiff received letters from the defendants' bank stating that the insufficient payments were as the result of bank errors. (Carolan Deposition, Page 98, Lines 23 – 24; Page 99, Lines 1 -24; Page 100, Lines 1 – 17). The letters from the bank were not provided to us at the deposition, although the plaintiff brought various other documents with him. (Carolan Deposition, Page 102, Lines 15 – 19). The plaintiff's witness further testified that the plaintiff would not terminate a dealer if the insufficient funds were the result of bank errors. (Carolan Deposition, Page 101, Lines 1 -4). Despite this acknowledgement, the plaintiff's witness stated that he ignored these letters because he thought the bank was not telling the truth, yet the witness acknowledged that he had no factual basis to establish that the letters provided by the defendants' bank were not truthful. (Carolan Deposition, Page 101, Lines 20 -24; Page 102, Lines 1 – 10).

11. The plaintiff's witness stated in his Affidavit presented to this Court that another basis for terminating the defendants was because of irregularity in reporting the delivery date of motor vehicles. (Affidavit of John Carolan, Page 2, ¶ 6). Yet during his deposition, the plaintiff's witness acknowledged that he did not have any information to substantiate such a claim. (Carolan Deposition, Page 117, Lines 15 – 24; Page 118, Lines 1 -6; Pages 142 through 165; Page 166, Line 1). He also acknowledged that the claim was not even relevant to the circumstances in this case because the defendant was obligated to pay for motor vehicle within 48 hours of the plaintiff's presentment of the title to defendant for purpose of the sale to the customer, and in each instance the defendants have ALWAYS honored their obligations and NEVER defaulted. (Carolan Deposition, Page 117, Lines 15 – 24; Page 118, Lines 1 -6; Pages 142 through 165; Page 166, Line 1).

12. Another reason that plaintiff claims is a basis for the termination is plaintiff's allegation that the financial statements presented by defendants have irregularities in them. (Affidavit of Carolan, Page 2, ¶6; Deposition of Carolan, Page 88, Lines 20 – 24 and Page 89, Line 1 which outlines the basis for termination according to Carolan). For numerous reasons, not the least of which is that both defendants and plaintiff would need to compile the information which would then need to be looked at by an accounting expert retained by defendant's counsel to determine whether there are any irregularities, defendants' counsel was unable to explore this issue at the deposition of Carolan on Friday, January 9, 2004. I suspended and did not conclude Carolan's deposition on Friday, January 9, 2004. (Carolan Deposition, Page 166, Lines 2 – 3). In addition, I was unable and need time to explore all the other basis that the plaintiff claims justify terminating the floor plan.

13. I am also lead counsel in the case *Minuteman Trucks, Inc. v. NH 80 Corporation and Sterling Truck Corporation,* C.A. No. 02-3481-BLS, currently pending in the Business Litigation Session of the Suffolk County Superior Court, before Judge Van Gestel.

14. The *Minuteman* case is an elaborate piece of litigation involving alleged violations of Massachusetts General Laws Chapter 93B for price discrimination and third party distribution violations by a manufacturer against my client, a truck dealer. This is a very involved case and one that has little likelihood of settling. Additionally, the matter is being hotly contested and there is able opposing counsel representing the manufacturer, Bingham, McCuthen.

15. The *Minuteman* case is being watched nationally and the plaintiff's legal fees are being partially paid for by the National Automobile Dealer's Association. To date the plaintiff

has expended, between attorney's fees, expert fees and associated costs, over five hundred thousand ($500,000) dollars.

16. The *Minuteman* case was originally set to go to trial on December 15, 2003 but because of the court's schedule, the mater was set for a certain trial date of February 9, 2004. In the meantime, the parties filed various motions that were heard and decided by Judge Van Gestel in late December of 2003. The result of those decisions means that additional work needs to be done by counsel in coordination with plaintiff's experts. In addition, because we did not go to trial in December, it is necessary to prepare all the witnesses during the month of January. I do not have the time to prepare adequately for the *Minuteman* case, which is a very complicated and elaborate factual case, and to try this case in the manner that it deserves and that all the clients are entitled to.

17. Trial in the *Minuteman Trucks* case is set for February 9, 2004, which trial is expected to last one month. It is not as simple as merely postponing the *Minuteman* case should this case go first. Judger Van Gestel's schedule is very busy and he has been kind enough to provide us with a date certain. A postponement of the *Minuteman* case will prejudice the plaintiff in that case. Failure to have the time to adequately prepare for the *Minuteman* case will compromise and prejudice my ability to try the *Minuteman* case.

18. As important, as an experienced litigator, I can state that there are facts and issues in this case that need to be adequately and properly explored. Based on the brief deposition that I took on Friday, January 9, 2004, the defendant can not be properly defended at this time. I need time to do proper discovery in this case, and I am not at this time prepared to try this case.

19. In light of the fact that the complaint was just filed on December 29, 2003 and the answer is not due until January 20, 2004, as well as the admission of the plaintiff in the

deposition of Mr. Carolan that payments due under the contract are paid in full and that the defendants have honored their financial obligations to the plaintiff, (rather what is at issue in this case are "technical defaults"), there is a great prejudice to defendants if this case is not continued for trial for at least a six (6) month period of time to allow the defendants' counsel to adequately prepare for this trial.

20. Not only is the livelihood of the two principal stockholders at stake in this litigation, but also this is a business which has over forty employees and thousands of consumers that rely on the continued operation of the defendants' business.

21. Given the upcoming *Minuteman* trial, it is unlikely that I could adequately take discovery and prepare for a full trial in this case and also adequately prepare for my upcoming trial in the *Minuteman* Trucks case.

Signed under the pains and penalties of perjury, this the 12th day of January 2004.

Paul Harris by KMC
Paul Marshall Harris