UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY d/b/a PRIMUS FINANCIAL SERVICES and AMERICAN SUZUKI AUTOMOTIVE CREDIT,<br><br>Plaintiff,<br><br>v.<br><br>GREAT ATLANTIC INTERNATIONAL, INC. and CAR CENTER USA, INC.,<br><br>Defendants.<br><br>GREAT ATLANTIC INTERNATIONAL, INC. and CAR CENTER USA, INC.,<br><br>Plaintiffs-in Counterclaim,<br><br>v.<br><br>FORD MOTOR CREDIT COMPANY d/b/a PRIMUS FINANCIAL SERVICES and AMERICAN SUZUKI AUTOMOTIVE CREDIT,<br><br>Defendant-in Counterclaim. | C. A. No. 03-12556 WGY |

**DEFENDANTS' EMERGENCY MOTION FOR A SIX MONTH
CONTINUANCE OF THE RULE 65(a)(2) CONSOLIDATION, OPPOSITION
TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF
AND REQUEST FOR A HEARING**

Defendants and plaintiffs-in-counterclaim, Great Atlantic International, Inc. and Car Center USA, Inc. (collectively referred to as "Great Atlantic" or "Defendants"), respectfully request that this Court deny Ford Motor Credit Company's ("Primus") request for injunctive

relief and continue the consolidated hearing with the trial on the merits for six months. As grounds for this motion, Great Atlantic states that: 1) injunctive relief is inappropriate because Primus does not have a likelihood of success on the merits; 2) injunctive relief is inappropriate because Primus does not risk irreparable injury if it waits six months for a full trial of this matter; 3) Primus has already approved a continued relationship with Great Atlantic through June of 2004; and 4) the Court's imposition of a trial only one month after the filing of the Complaint and just one week after the filing of Counterclaims is highly prejudicial and violates Great Atlantic's due process rights by denying Great Atlantic the right to put forth a zealous defense to Primus' claims and to prosecute its own Counterclaims.

## I. THIS COURT SHOULD DENY PRIMUS' REQUEST FOR INJUNCTIVE RELIEF.

Great Atlantic requests that this Court continue the consolidated trial of this matter for six months. This Court should deny Primus' request for an injunction in the interim because: (i) Primus cannot demonstrate the threat of immediate irreparable harm; 2) Primus cannot show a likelihood of success on the merits; 3) the balance of hardships tips in Great Atlantic's favor; and 4) the public interest would not be furthered by issuance of the injunction. *Massachusetts Coalition of Citizens v. Civil Defense Agency*, 649 F.2d 71 (1st Cir. 1981); *Grimard v. Carlston*, 567 F.2d 1171, 1173 (1st Cir. 1978).

### A. Primus Cannot Demonstrate that it Will Suffer Any Harm, Much Less Irreparable Harm, If the Court Denies its Request for an Injunction.

Injunctions should not issue absent a showing that there is a real danger that the act complained of will take place. "To warrant the granting of an injunction on grounds that irreparable injury is threatened, the injury contemplated must be real, not fancied; actual, not prospective; and threatened, not imagined." Charles Alan Wright, Arthur R. Miller and

2

Mary Kay Jane, Federal Practice and Procedure: Civil § 2942 (2d Ed. 1995) (quotation omitted).

      1.      Primus' Delay in Filing this Action Evidences that the Harm it Alleges Is Unlikely and Not Irreparable.

Primus first notified Great Atlantic that it no longer wished to continue the financing relationship in September of 2002 and set a termination date for the relationship of December 31, 2002. Affidavit of John Carolan ("Carolan Aff.")[1], ¶ 7. Primus admits that since then it has "acceded to several request ... to extend the termination date, and extensions have been granted to January 31, 2003, May 31, 2003 and July 31, 2003." Carolan Aff., ¶ 8. Primus filed its Complaint on December 19, 2003, requesting an injunction based on the same facts that, 14 months earlier, it claimed supported its decision to terminate the relationship with Great Atlantic. Primus' inexplicable delay in seeking injunctive relief undercuts its claim that it is somehow suffering or will suffer irreparable harm. Presumably, if the harm were truly irreparable and Primus needed the protection at issue, it would not have had the luxury of waiting over a year before bringing this case to the attention of the Court. See *Helena Rubenstein, Inc. v. Frances Denney, Inc.*, 286 F. Supp. 132, 134 (D.C. N. Y. 1968)(two year delay in bringing suit undermined claim of urgent need for relief).

      2.      Primus' Continued Advances[2] to Great Atlantic Undermine its Claim of Irreparable Harm.

Primus claims that it first determined that it no longer wanted to do business with Great Atlantic in September of 2002. However, since the date of that determination, Primus has continued to undertake financing of Defendants' automobiles. While intermittently

---

[1] The Carolan Affidavit was previously filed with the Court in support of Primus Motion for a Preliminary Injunction. For the Court's convenience, a copy of the Carolan Affidavit is submitted herewith.
[2] "Advances" is a defined terms under the parties' contracts. See, infra, Section I(B)(1).

3

alluding to termination of the relationship, Primus continued to make Advances to Great Atlantic under the floorplan financing arrangement. In fact, to date, Primus continues to approve and make Advances to Great Atlantic under the same Applications for Wholesale Financing and Security Agreements[3] ("Agreements") that form the basis of its Complaint. While on one hand Primus claims in its Complaint that it has "terminated financing to defendant Great Atlantic and on December 10, 2003 made written demand upon Great Atlantic for payments of all amounts outstanding", it has simultaneously continued to extend financing to Great Atlantic. Moreover, John Carolan, the Branch Manager at Primus responsible for the Defendants' accounts and the individual who signed the Complaint on behalf of Primus, testified during his deposition that Primus has approved a continued relationship with Great Atlantic through June of 2004, Primus has not terminated the relationship with Great Atlantic and Primus is able and will continue to do business with Great Atlantic even if the Court's resolution of this matter does not take place in less than six months.[4]

If Primus really considered itself at risk of irreparable injury due to a continued financial relationship with Great Atlantic, it would not have approved through June 2004 a course of conduct which, instead of decreasing its exposure, maximizes it. Primus' continuous Advances to the Defendants are inconsistent with its suggestion that Great Atlantic poses a risk of non-payment or other irreparable harm. John Carolan states that as of October 13, 2003, Great Atlantic's "current, weekly audits are good, financial statements are on time and report profitability. There are no matured units over six months" and that

---

[3] Great Atlantic International, Inc. and Car Center USA, Inc. each signed a separate Application for Wholesale Financing and Security Agreement. However, the language in each contract is identical. They are referred to collectively throughout this document.
[4] Carolan gave this testimony during the continuation of his deposition on January 29, 2004. A copy of this deposition transcript will be provided to the Court as soon as it is received from the court reporter.

4

the "real estate mortgage continues to be current." A copy of the October 13, 2003 email is attached as Exhibit A. Carolan testified in his deposition yesterday that the decision to file this lawsuit was made in September of 2003. Primus' decision to wait three months after deciding to sue to actually file the Complaint and its own internal notes dated one month after the decision to file this lawsuit was made, evidence that Great Atlantic does not pose a risk of irreparable harm.

> 3. Any Damages Primus May Suffer During the Six Months of Continuance Would Be Fully Compensable by Monetary Damages.

It is well settled that for the purposes of resolving a claim for injunctive relief, irreparable injury does not exist where a plaintiff has satisfactory remedy at law. *Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir. 1986). A plaintiff seeking an injunction has the burden of showing that its injury is not calculable in terms of money damages. *Automatic Radio Manufacturing Company v. Ford Motor Company*, 272 F.Supp. 744, 749 (D. Mass. 1967); aff'd 390 F.2d 113 (1st Cir.), *cert. denied*, 391 U.S. 914 (1968).

Primus' own papers evidence that it will only risk monetary damages if an injunction does not issue for six months. Specifically, Primus states that without an injunction it will "incur substantial loss through depreciation [of the vehicles]". Complaint, ¶¶ 31 and 17. Primus does not allege that its injury will not be compensable by monetary damages. Primus is protected in the case of monetary damages by a perfected security interest in all of the vehicles comprising Great Atlantic's used car inventory. Complaint, ¶¶ 9, 10, 23 and 24. This security interest protects Primus' position with respect to other creditors. In addition, Primus has actual possession to the title to all of the vehicles that Great Atlantic International, Inc. has financed through Primus. *See* Affidavit of Paul Marshall Harris

5

("Harris Aff."), ¶ 11.[5] The value of Primus' collateral in the Defendants' vehicles will not deteriorate in six months.[6] Any deficiency Primus may suffer is protected by the personal guarantees from both Nader Jamali Affoussi and Ardeshir Jamali Affoussi of Great Atlantic's obligations. Carolan Aff., ¶ 9 and attached draft Forbearance Agreement, ¶D. Finally, Primus' claim of deterioration of collateral is belied by the fact that Primus continued to fund the purchase of additional vehicles and that none of the vehicles in Great Atlantic's lots have reached their maturity date (six months for used vehicles and two years for new vehicles). See, infra, Section I(B)(1).

Primus does not allege anywhere in its Complaint or supporting papers that Great Atlantic is in risk of insolvency or otherwise will be unable to satisfy any monetary judgment that may be issued in this action. See *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520 (11th Cir. 1994)(injunctive relief freezing defendant's assets in order to establish fund for collection of judgment not appropriate for injunction). In fact, John Carolan testified that the Defendants have made all payments under their obligations to Primus and that the Defendants are not in default on any payments. Harris Aff., ¶ 8.

**B.** **Primus Does Not have a Likelihood of Success on The Merits of Its Claims.**

    1.    Great Atlantic Does Not Have an Obligation to Repay Primus on Demand Because the Documents Setting Forth the Parties' Obligations Contain Specific Payment Terms.

An instrument is payable on demand when the time for repayment is determined at the sole discretion of the holder. See M.G.L. c. 106:3-108. The parties' payment obligations are governed by three documents: the Agreements, the Finance Plans for

---

[5] The Harris Affidavit was previously submitted to the Court in support of Great Atlantic's Motion for a Continuance. For the Court's convenience, a copy of the Harris Affidavit is submitted herewith.
[6] Automobiles are not perishables and they do not pose a threat of speedy decline in value. See *One Twenty Credit Union v. Darcy*, 40 Mass. App. Dec. 64 (1968).

Automotive Dealers (the "Plan") and the "promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing the same" (the "Statements") (collectively referred to as the "Instruments"). The Plan and the December 2003 Statements for Great Atlantic International, Inc. and Car Center USA, Inc. are attached hereto as Exhibits B and C respectively. The Instruments do not give Primus the unfettered right to demand, at will, payment of all Advances or possession of the property in which it has a security interest.

Section 1 of the Agreements defines an "Advance" as follows:

> PRIMUS at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which and the period for which it will make advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" individually or "Advances" collectively), under the Plan or otherwise.

Section 3 goes on to state that "[t]he aggregate amount outstanding from time to time of all Advances made by Primus hereunder shall constitute a single obligation of dealer, notwithstanding Advances are made from time to time."

Section 3 of the Agreement, in relevant part, provides the starting point for determining the payment terms under the Instruments:

> Unless otherwise provided in the promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to PRIMUS, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances, plus PRIMUS' interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by PRIMUS hereunder with respect to an item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer.

This paragraph specifically provides that, if different, the payment terms provided by the Statements trump the language of this section. The Statements for Great Atlantic International, Inc. and Car Center USA, Inc.'s used vehicles Advances set the maturity date

7

for each Advance at six months from the date of funding.[7] The Statements for Car Center USA, Inc.'s new vehicles Advances set the maturity date for each Advance at 24 months from the date of funding. The same repayment terms are allowed by the Plans.

The Instruments set forth specific repayment terms. The Advances as to used cars are payable six months from the date of funding. The Advances as to new cars are payable 24 months from the date of funding. In his deposition yesterday, Carolan identified the most recent Statements (month ending December 2003) for each of the two dealerships and confirmed that none of the Advances made by Primus had reached their maturity dates – six months for used cars and 24 months for new cars. See Exhibit C. Because the Instruments contain specific repayment terms and fixed maturity dates, they cannot be payable on demand.

    2.    The Instruments are Not Payable on Demand Because They Set Forth Limitations on Primus' Ability to Accelerate Payment.

Further proof that the Instruments are not payable on demand, in addition to their fixed maturity dates and repayments terms, is the fact that they specifically set forth Events of Default. Where the terms and conditions of a so-called demand note indicate that the parties intended the obligation to become due and payable upon the happening of a future event, the debt is not payable upon demand. The obligation matures only when the agreed-upon event occurs. *Spencer Companies, Inc. v. Chase Manhattan Bank*, 81 B.R. 194, 198 (D. Mass. 1987). The presence of conditions on the acceleration of the payment of the loan or the repossession of goods indicates that the agreement "cannot be simply terminated at the whim of the parties; rather the right of termination or acceleration was subjected to

---

[7] During the second day of his deposition, on January 29, 2004, Carolan specifically testified that the Statements formed a part of the parties' agreement and provided the repayment terms for the Advances. A copy of this deposition transcript will be provided to the Court as soon as it is received from the court reporter.

8

various limitations." *Reid v. Reid*, 821 F.2d. 9, 13 (1st Cir. 1987) (court refuses to enforce note as demand instrument in part because of limiting conditions on acceleration). See also *Martin Specialty Vehicles, Inc., M.S.V. Inc. v. Bank of Boston*, 87 B.R. 752 (Bankr. D. Mass. 1988)(court does not treat automobile dealership's floorplan obligations which stated they were "payable on demand" as demand instruments because the notes listed various events of default and parties had an agreement for payment of the notes over time); *L. Mitchell Coffee, Jr. and LMC Motors, Inc. v. General Motors Acceptance Corp.*, 5 F. Supp.2d 1365 (S.D. Ga. 1998)(court construes demand note together with floorplan financing agreement providing for instance of default and finds notes could only be called upon event of default).

Although the Agreements contain demand language, they also provide limitations to Primus' right to accelerate payment or take possession of collateral:

> Upon the occurrence of an Event of Default, PRIMUS may accelerate, and declare immediately due and payable, all or any part of the unpaid balance of all Advances made hereunder together with accrued interest and flat charges, without notice to anyone. In addition, PRIMUS may take immediate possession of all property in which it has a security interest hereunder

Agreements, Section 9. Because the Agreements provide limitations on Primus' ability to terminate the lending relationship, take possession of collateral and accelerate payment of the Defendants' obligations, they are not pure demand instruments. Primus is not entitled to treat the Agreements as demand instruments and must instead establish the existence of an Event of Default in order to obtain the remedy it seeks.

    3.    Primus Does Not Allege A Default under the Agreements.

The Agreements provide that Primus may take immediate possession of all property in which it has a security interest upon an "Event of Default." The Agreements define an "Event of Default" as: a) Defendants' failure to promptly pay any amount owing to Primus

9

when it becomes due and payable; b) Defendants' failure to observe or perform any obligations secured by the Agreements; c) Defendants making materially false or misleading representation; and d) Defendants' bankruptcy, insolvency or receivership.

The happening of an Event of Default is a condition precedent to Primus' right to take immediate possession of the Defendants' vehicle inventory pursuant to their security interest. A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. See *Malden Knitting Mills v. United States Rubber Co.*, 301 Mass. 229, 233 (1938); *Wood v. Roy Lapidus, Inc.*, 10 Mass. App. Ct. 761, 763 n.5 (1980). If the condition is not fulfilled, the obligations attached to the condition are unenforceable. See, generally, S. Williston, CONTRACTS § 38:6 (4th ed. 2000 & Supp. 2003); Restatement (Second) of Contracts § 225 (1981).

Primus fails to allege any instances of an Event of Default in its Complaint or in the Affidavit of John Carolan submitted in support of Primus' Motion for Preliminary Injunction. In fact, during his deposition yesterday, Carolan acknowledged that Primus is not relying on any instance of default in filing this lawsuit. Moreover, Primus could not assert a default since at the time Primus made the demand that it attaches to its Complaint, internal documents acknowledge that Great Atlantic was meeting all of its obligations and was not in default. See Exhibit A and Carolan's November 4, 2003 email attached as Exhibit D. During his deposition Carolan specifically admitted that the Defendants' payments have been made in full and that the Defendants are not in default on any payments. Carolan Deposition, p. 93.[8] Carolan also clarified the statement in his affidavit

---

[8] The Carolan Deposition Transcript is attached to the Affidavit of Paul M. Harris, which is submitted herewith.

that the Defendants' payments were returned for insufficient funds, stating that no more than fifteen (15) payments, of the approximate one thousand payment transactions, were returned for insufficient funds and that the Defendants made good on these payments within 48 hours. See Carolan Deposition, pp. 96-98, 66, 93. Finally, Carolan testified that the Defendants have ALWAYS honored their payment deadline obligations and have NEVER defaulted. Carolan Deposition, pp. 117, 118, 142-165, 166.

### C.     The Balance of the Equities Tip in Favor of Great Atlantic, Not Primus.

While Primus cannot demonstrate a likelihood of irreparable harm if the injunction is not issued, Great Atlantic would suffer great harm if the injunction is issued. Through the injunction Primus is essentially seeking the ultimate relief to which it would be entitled upon successful completion of its case. Thus, issuance of the injunction would immediately put Great Atlantic out of business. It would deprive the individual owners of their livelihood and the business and goodwill that they have built over a period of fifteen years. It would also put the approximately 40 Great Atlantic employees out of work. The inability of the Defendants to operate their business would put them in almost immediate default of their other obligations to Primus, including their real estate mortgage. Finally, the issuance of the injunction would effectively prevent the Defendants from even going back into the only business they know as the foreclosure that Primus pursues would taint Great Atlantic in the eyes of other lenders.

### D.     The Public Interest Will Not Be Furthered by the Injunction.

It is Primus burden to demonstrate that issuance of a preliminary injunction would not have a negative effect on the public. It has not done so. To the contrary, driving a profitable and viable business into bankruptcy does not further the public good. Many families depend on the wages they earn at the Defendants' dealerships.

11

## II. THIS COURT SHOULD CONTINUE THE TRIAL ON THE MERITS IN THIS ACTION FOR SIX MONTHS.

### A. No Exigency Exists Justifying Immediate Trial.

The Supreme Court has cautioned that accelerated determination on the merits at the preliminary injunction stage is generally inappropriate. *University of Texas v. Camenisch*, 101 S.Ct. 1830, 1834 (1981). Because consolidation pursuant to Fed. R. Civ. P. 65(a)(2) is not appropriate in every case where an injunction is demanded, the Court should determine whether a real exigency has been shown justifying accelerating the case. Charles Alan Wright, Arthur R. Miller and Mary Kay Jane, Federal Practice and Procedure: Civil § 2950 (2d Ed. 1995). Accelerated consolidation is inappropriate in this case because the Defendants have agreed to a full trial on the merits within six months and Primus has admitted that it will not suffer any prejudice in the interim.

The limited discovery that has taken place to date indicates that Primus' claims are not justified. *See* Harris Aff., ¶¶ 8-12, 18. The discovery evidences that Primus will not be harmed if an injunction does not issue for the next six months because: (i) there is no risk of irreparable harm; (ii) Primus is not in danger of suffering a harm for which it will not have an adequate remedy at law, and (iii) Primus has already internally approved Great Atlantic for continued financing through June of 2004. See Supra, Section I. Accelerated consolidation of the preliminary injunction hearing with a full trial on the merits is inappropriate in this case.[9]

---

[9] Consolidation pursuant to Rule 65(a)(2) is also inappropriate because Primus has not requested a permanent injunction. Where no permanent injunction is sought by either party, it is not possible to consolidate the hearing on the preliminary injunction with the trial on the merits. *Humble Oil & Refining Company v. Harang*, 262 F. Supp. 39, 45 (D.C. L.A. 1966)("since no permanent injunction is sought... the case does not fall within the provision of Rule 65(a)(2)).

12

B.  **Accelerated Consolidation Pursuant to Rule 65(a)(2) is Inappropriate Because it is Highly Prejudicial to the Defendants.**

The Complaint in this case was served on the Defendants on December 29, 2003.[10] On January 8, 2004, counsel for Great Atlantic was notified by plaintiff's counsel to appear at Court at 2 p.m. that day.[11] *See* Harris Aff. at ¶ 5. It was at this Court appearance on January 8, 2004 that the parties were informed that a full trial on the merits would proceed on Monday, January 12, 2004 or as soon thereafter as the Court's schedule would permit. The Court has now scheduled this matter for trial on Monday, February 2, 2004.

The Defendants have not been afforded a meaningful opportunity to explore their defenses to Primus' claims or conduct meaningful discovery. The incredible effort required to put this case together for trial in less than three weeks has limited the Defendants' ability to undertake full discovery. In expedited fashion, Defendants have only taken the deposition of John Carolan. While Primus may have been willing to produce additional witnesses, the time constraints on this case made it virtually impossible to prepare and take additional depositions. Moreover, although Defendants have been unable to undertake a thorough review of all of Primus' documents, the review to date evidences that many documents remain to be produced.

Defendants filed their answer to the Complaint asserting counterclaims on January 26, 2004. The Defendants assert significant claims against Primus sounding in breach of contract, breach of the covenant of good faith and fair dealing, estoppel and violation of G.L. c. 93A. Because of the short time that has elapsed since the original filing of the Complaint, the Defendants have had insufficient time to analyze all possible claims against

---

[10] Defendants' counsel did not receive the complaint until January 5, 2004 due to the holidays.
[11] Great Atlantic, and not counsel, was served with the Motion for a Preliminary Injunction, and as such, counsel only learned of the Preliminary Injunction by viewing the docket online hours before having to appear in court.

13

the Defendants and obtain and review all relevant documents. The Defendants have not had time to prepare the presentation of their claims for trial. For example, Great Atlantic's damage claims must be established through an expert. Great Atlantic has had less than four (4) days to find an expert, retain the expert, bring the expert up to speed on the case and obtain a preliminary report. Given the expedited nature of the retention, the expert's testimony would be subject to attack on cross examination because of the short period of time afforded the Defendants to provide information to the expert.

The amount of time provided to Great Atlantic to prepare for this trial, absent the need for an immediate injunction, is patently unfair. The discovery done to date supports various defenses for Great Atlantic in addition to the Counterclaims that Great Atlantic has just filed. There are many issues in this case that need to be explored further, such as whether Primus has a justifiable basis to terminate Great Atlantic, and whether Primus has complied with its obligations under the parties' financing agreement. *See* Harris Aff., ¶¶ 8-12, 18. Moreover, there are additional documents that need to be reviewed, witnesses that need to be deposed and interviewed, and defenses and counterclaims that could be asserted, all of which cannot possibly be accomplished in the four weeks that counsel was given to prepare before trial. Great Atlantic should be afforded the opportunity to explore and contest the plaintiff's claims, as well as fully evaluate and prepare its defenses and counterclaims. *See Commodity Futures Trading Comm'n v. Board of Trade of the City of Chicago*, 657 F. 2d 124 (7th Cir. 1981) (consolidation should not have deprived the parties of a full opportunity to discover and present all of their evidence).

### III. CONCLUSION

Fed. R. Civ. P. 65(a)(2) does not, and should not, provide a vehicle for litigants to bypass fair adjudication of their claims and deprive their counterparts of a full and fair

opportunity to assess and present their defenses on the merits. In this case, consolidation of the preliminary injunction with a trial on the merits, within a month of the Complaint being served, wreaks injustice by requiring the Defendants to forego discovery, defenses, and full prosecution of its counterclaims.

IV.     **GREAT ATLANTIC'S REQUEST FOR A HEARING**

Great Atlantic respectfully requests a hearing on this Emergency Motion for a Six Month Continuance of the Rule 65(a)(2) Consolidation, Opposition to Plaintiff's Motion for Injunctive Relief and Request for a Hearing as it believes a hearing would assist the Court in determining the issued raised therein. It is essential that the Court schedule a hearing because this motion implicates the livelihood and property interests of all of the Defendants.

**WHEREFORE**, the Defendants respectfully request that this Court deny Primus' Motion for Preliminary Injunction and continue the consolidated trial on this matter for six months.

Respectfully submitted,

GREAT ATLANTIC INTERNATIONAL,
INC. and CAR CENTER USA, INC.,

By their Counsel,
GADSBY HANNAH LLP

_/s/ M. Carolina Avellaneda_
Daniel J. Kelly, BBO# 553926
M. Carolina Avellaneda, BBO #566740
Paul Marshall Harris, BBO# 223500
Kristin M. Cataldo, BBO #654033
225 Franklin Street
Boston, MA  02110
(617) 345-7000

Dated: January 30, 2004

## LOCAL RULE 7.1 CERTIFICATION

I, M. Carolina Avellaneda, hereby certify that over the course of the last month various attorneys from this office have conferred with opposing counsel concerning the general issues raised by this Motion and in an attempt to settle this matter without success.

_____
M. Carolina Avellaneda

## CERTIFICATE OF SERVICE

I, M. Carolina Avellaneda, do hereby certify that on this 30th day of January, 2004, I caused a copy of the foregoing to be served on the person following by hand-delivery.

    Michael E. Hager, Esq.
    Dane & Howe, LLP
    45 School Street
    Boston, MA  02108-3204

_____
M. Carolina Avellaneda.