UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY, d/b/a PRIMUS FINANCIAL SERVICES and AMERICAN SUZUKI AUTOMOTIVE CREDIT,<br><br>  Plaintiff<br><br>v.<br><br>GREAT ATLANTIC INTERNATIONAL, INC., and CAR CENTER USA, INC.,<br><br>  Defendants | CIVIL ACTION<br>NO. 03-12556-WGY<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY MOTION TO QUASH <u>TRIAL SUBPOENAS</u> |

<u>Introduction</u>

Ford Motor Credit Company ("Ford Credit") commenced the present action in mid-December 2003 against two local automotive dealerships for which it had been providing new (Car Center USA, Inc.) and used (Great Atlantic International, Inc.) floorplan financing. Couched as a complaint for replevin, Ford Credit's claim was its right to possession of the new and used vehicles floorplanned by it, which collateralize the financing provided to the dealers through its "PRIMUS" branch office in Braintree, Massachusetts. The defendants have answered and counterclaimed.

The Court compressed Ford Credit's application for a preliminary injunction with a hearing on the merits, and trial is scheduled to start on February 2, 2004.

The defendants have purported to certain trial witness subpoenas upon Gregory C. Smith, (Ford Credit's Chairman and CEO), Joseph McMahon (Vice-President of Eastern Territory for Ford Credit's PRIMUS subdivision) and Michael Howard (Director of Field Operations, Eastern United States, for Ford Credit's PRIMUS subdivision. Mr. Smith's office is in Dearborn, Michigan, and Messrs. McMahon and Howard have their offices in Franklin, Tennessee. Copies of the subpoenas were left at the plaintiff's aforesaid Braintree, Massachusetts office.

Ford Credit has moved pursuant to Fed.R.Civ.P. 45 to quash these three subpoenas. This motion is supported by an affidavit from each of the three persons involved.

Argument

I.  <u>Service of the Subpoenas Was Invalid</u>

The service requirements of a Rule 45(b) subpoena are unique to that rule. Rule 5 of the Federal Rules covers the service of pleadings and other papers in a case, but according to the Advisory Committee comments to the 2001 amendments, "[s]ervice under Rules 4, 4.1, 45(b), and 71A(d)(3) – as well as rules that invoke those rules – must be made as provided in these rules." In turn, Rule 45(b)(1) requires that service of a subpoena upon a named person "shall be made by delivering a copy thereof to such person . . . " Service of the three trial subpoenas in issue was

not made in person, as evidenced by the affidavits of Messrs. Smith, McMahon and Howard.

Case law supports the plaintiff's position that delivery <u>in person</u> is meant by Rule 45(b)(1). <u>Chima</u> v. <u>United States Dept. of Defense</u>, 23 Fed.Appx.721, 724 (9th Cir. 2001); <u>F.T.C</u>. v. <u>Compagnie de Saint-Gobain-Pont-a-Mousson</u>, 636 F.2d 1300, 1312-1313 (D.C. Cir. 1980); <u>In re Smith</u>, 126 F.R.D. 461 (E.D.N.Y. 1989); <u>Smith</u> v. <u>Midland Brake, Inc.</u>, 162 F.R.D. 683 (D. Kan. 1995). See, generally, 9A Wright and Miller, <u>Federal Practice and Procedure (Civil 2d)</u>, ¶2454 (1995).

Furthermore, the witnesses in question are located beyond the range (100 miles from place of trial) permitted by Rule 45, i.e. in Dearborn, Michigan and Franklin, Tennessee. This is an additional basis for quashing the subpoenas. <u>Johnson</u> v. <u>Land O' Lakes, Inc.</u>, 181 F.R.D. 388, 396-397 (N.D. Iowa 1998) [officer of corporate party located beyond 100 miles from place of trial not subject to court's subpoena power].

Accordingly, the subpoenas are fatally defective and should be quashed.

II.  <u>Corporate Executives are Entitled to Protection</u>.

The Federal Rules of Civil Procedure provide district courts with broad authority to protect litigants from duplicative, unduly burdensome, oppressive or harassing demands. Cf. Fed.R.Civ.P. 26(b)(2). Recognizing that "the spirit of the [discovery] rules

3

is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose facts and illuminate the issues," the Advisory committee on Civil Rules (which drafted these provisions) empowered courts to regulate discovery so as to avoid abuse and waste. See Fed.R.Civ.P. 26(b), Advisory Committee's Notes (1983). The same considerations should apply to the issuance of trial subpoenas.

Federal and state trial courts have long recognized the potential for abuse inherent in attempts by litigants to depose senior executives of their corporate adversaries. As one court said in quashing a deposition of a senior official, senior corporate officers are "singularly unique and important individual[s] who can be easily subjected to unwarranted harassment and abuse. [They have] a right to be protected, and the courts have a duty to recognize [their] vulnerability." Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985).

Courts therefore have developed a fairly uniform set of guidelines for evaluating requests to depose senior corporate executives. Those guidelines begin with the premises that, although such executives are not ipso facto immune from discovery because of their positions, the inherently burdensome and disruptive nature of such depositions (combined with the potential for abuse) dictates that they be permitted only as a last resort. Accordingly, litigants are allowed to depose senior executives of

4

their corporate adversaries only after exhausting less burdensome means of discovery, and then only if they show that the deposition is a necessary method of obtaining that person's unique personal knowledge of relevant facts. See, e.g., Baine v. General Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991) (quashing deposition after finding that plaintiff had failed to show that it could not obtain the evidence from another less burdensome source within the corporation); Thomas v. IBM, 48 F.3d 478, 483-84 (10th Cir. 1995) (upholding protective order preventing the deposition of IBM's Chairman where plaintiff made no attempt to demonstrate that the information sought from the Chairman could not be gathered from other IBM personnel, and IBM had offered to make other IBM employees with more direct knowledge of relevant facts available); Crown Cent. Petroleum Corp. v. Garcia, 904 S.W.2d 125, 128 (Tex. 1995) (holding that litigant could not depose a high ranking corporate official absent attempt to "obtain the discovery through less intrusive methods"); Liberty Mut. Ins. Co. v. Superior Court, 10 Cal.App. 4th 1282, 1289 (Cal.Ct.App. 1992) (quashing deposition of senior executive where no showing that executive had "superior personal knowledge of discoverable information" and plaintiff had not yet employed "less intrusive methods" of obtaining discovery).

Among the reasons for restricting the depositions of senior corporate executives is the fact that, in most cases, people who serve in these positions do not have substantial firsthand

5

knowledge of the events in question. Invariably, other witnesses exist within the corporate structure who are better suited to address the issues at hand. See, e.g., Hughes v. General Motors Corp., 18 Fed.R.Serv.2d 1249, 1250 (S.D.N.Y. 1974) (quashing deposition of General Motors' president on the grounds that "[n]o good cause exists to require defendant to submit its president for a deposition when it is clear that the information plaintiff wants is available through other employees of defendant, and such employees have been questioned or on plaintiff's request can be questioned."); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (upholding trial court's protective order vacating notice of deposition of Upjohn's president and "requir[ing] plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts before deposing [its president]").

Moreover, senior corporate officers would be unable to discharge their responsibilities effectively if required to testify in every lawsuit involving the corporation whenever they have some level of "knowledge" concerning the subject matter of the litigation. See, e.g., Gazaway v. Makita U.S.A., Inc., 1998 WL 219771, at *3 (D.Kan. April 16, 1998) (granting protective order for corporation's former president where the "proposed deposition would disrupt the work of the deponent, with little if anything of consequence to be gained from it"); Consolidated Rail Corp. v. Primary Indus. Corp., 1993 WL 364471, at *1 (S.D.N.Y.

6

Sept. 10, 1993) (holding that Chairman/CEO and two Vice Presidents of Conrail should not be deposed absent demonstration of unique knowledge and noting that "unfettered discovery of corporate executives would threaten disruption of their business"); Liberty Mutual, 10 Cal.App. 4th at 1288 (citing Salter, 593 F.2d 649, 651 (5th Cir. 1979)).

Finally, courts are mindful of the fact that litigants and their lawyers often seek to compel depositions of high-profile corporate officials for illegitimate reasons – such as to attract media attention to their lawsuit and their role in it, or to impose personal inconvenience upon high-level decisionmakers to obtain settlement leverage. See, e.g., Mulvey, 106 F.R.D. at 366 (noting potential for "unwarranted harassment and abuse" if senior executive's deposition is allowed). Courts therefore allow litigants to depose senior corporate officers only after the litigant has exhausted less burdensome means of discovery, and then only if the litigant shows that the deposition is necessary to obtain that person's unique personal knowledge of relevant facts.

It is clear from his affidavit that Gregory C. Smith has no relevant knowledge at all to provide. Requiring his presence at trial would unnecessarily disrupt Ford Credit's business and serve no purpose other than harassment. The subpoena addressed to him should be quashed.

Likewise it is evident from the affidavits of Messrs. Howard and McMahon that they have no meaningful testimony to offer and should also be protected from the invasiveness and harassment of the subpoenas addressed to them.

## Conclusion

For the reasons set forth in the foregoing argument the Court should grant Ford Credit's motion to quash the three subpoenas.

Respectfully submitted,

_____
Michael E. Hager, Esquire
Dane & Howe, LLP
45 School Street
Boston, MA 02108-3204
(617) 227-3600
BBO No. 216460